312 P.2d 533

PERMIAN BASIN INVESTMENT CORPO-
RATION, a Texas corporation, Plaintiff
and Defendant in Intervention, Appellee,
v.
R. L. LLOYD, Defendant and Counter-
Claimant,
W. C. Gilmore and J. Robert Phillips, Jr.,
Plaintiffs in Intervention, Appellants.

R. L. LLOYD, Plaintiff,
v.
PERMIAN BASIN INVESTMENT CORPO-
RATION, a Texas corporation,
Defendant, Appellee,
Green Hornet Uranium Corporation, a Del-
aware corporation, Defendant,
W. C. Gilmore and J. Robert Phillips, Jr.,
Defendants, Appellants.
No. 6146.

Supreme Court of New Mexico.
June 10, 1957.

George E. Stevens, Albuquerque, for appellants, W. C. Gilmore and G. Robert Phillips, Jr.

Simms, Modrall, Seymour, Sperling & Roehl, Albuquerque, for appellee, Permian Basin Investment Corp.

LUJAN, Chief Justice.

W. C. Gilmore and J. Robert Phillips, Jr., appeal from adverse judgments in two causes consolidated below in which they sought unsuccessfully to establish their right as third party beneficiaries to recover damages from Permian Basin Investment Corporation because of its refusal to perform its contract with Green Hornet Uranium Corporation to purchase a certain State of New Mexico prospecting permit on lands containing deposits of uranium.

A brief statement of the case will aid in untangling the parties and their interest in this litigation.

Permian Basin Investment Corporation brought suit against R. L. Lloyd for conversion of $15,000 delivered by it to Lloyd to be placed in escrow in an Albuquerque bank by Lloyd for the purpose of purchasing the permit in question. By answer Lloyd admitted receipt of the money, denied he had converted it to his own use and stated he believed there were adverse claims to the sum. He further stated he had filed an interpleader action in federal district court and paid the sum into the registry of the court in that action. We are not told what disposition, if any, was made of the action in federal court; but, Lloyd did file an interpleader action in the court below naming as defendants Permian Basin Investment Corporation, Green Hornet Uranium Corporation and Gilmore and Phillips. Green Hornet Uranium Corporation disclaimed any interest in the fund of $15,000 deposited in the interpleader action and the case was dismissed as to it.

Later, Gilmore and Phillips were allowed to intervene as plaintiffs in the action for conversion between Permian Basin Investment Corporation and Lloyd.

The actions for conversion and interpleader were consolidated for trial to the court. Findings of fact and conclusions of law were made in both cases. In the action for conversion, judgment was entered in favor of the plaintiff, Permian Basin Investment Corporation, against the defendant, Lloyd and the complaint of the intervenors, Gilmore and Phillips was dismissed with prejudice. In the interpleader action, judgment was entered in favor of the defendant, Permian Basin Investment Corporation, against Lloyd, plaintiff, and Gilmore and Phillips, defendants, with the order that the $15,000 deposited in the court registry be paid to Permian Basin Investment Corporation.

Except where referred to specifically by name, the appellants, Gilmore and Phillips, will be referred to as intervenors; Permian

4

Basin Investment Corporation, appellee, will be called the promisor, and Green Hornet Uranium Corporation the promisee. Lloyd did not appeal from the judgments.

In August, 1954, the intervenors acquired New Mexico Placer Prospecting permit No. M–4390 covering a certain section of land valuable for uranium deposits. In September following they sold this permit to Richard D. Bokum, reserving in themselves a seven and one-half percent royalty interest and a fifteen-day first refusal option under which the intervenors had the right, for fifteen days after receipt of notice that a bona fide offer of purchase of the permit had been made to Bokum by a third person, to repurchase the permit on the same terms and conditions as made in the bona fide offer.

By mesne assignments, the promisee became the owner of the permit subject to intervenors' rights. Some days before December 18, 1954, the promisee received a bona fide offer of purchase of the permit for $55,000. Notice of the offer was conveyed to intervenors who decided to exercise their option to repurchase the permit. While making preparations so to do, Lloyd communicated to the intervenors that he and his associates (one of whom was the promisor) desired to purchase the permit for $70,000. On December 11, 1954, the intervenors assigned their first refusal option to Lloyd for a period of one week in order that Lloyd and the promisor could contract with the promisee for the purchase of the interest covered by the prospecting permit. Following this assignment, and prior to the drawing of the agreement between promisor and promisee, it was agreed between the intervenors and the promisee that a sale of the permit would be made directly from it to the promisor, instead of following the circular course of a sale first being made to the intervenors for $55,000 (the sum of the bona fide offer made to promisee), to be followed by a sale from the intervenors to the promisor for $70,000.

Under the terms of the agreement between the intervenors and the promisee, the intervenors were to receive $10,000 of the purchase price to be paid by the promisor, while Lloyd was to receive $5,000 from such source, thus making the actual purchase price to be retained by the promisee the sum of $55,000.

On December 18, 1954, a contract was entered into between the promisee as seller and John J. Bresnahan, Lloyd and the promisor as buyers for the transfer of the permit for the consideration of $70,000, subject to the buyers' approval of the title and verification of the accuracy of a geologic report furnished by the promisee.

The only reference in this contract to the intervenors was in the following provision:

"4. Upon approval of title and verification of the accuracy of the geologic evaluation within the time limit set forth above (30) days, Seller will execute an assignment of the above-described Placer Permit to Buyers or to any party designated by Buyers, warranting title to said Permit subject only to:

(a) Royalty in favor of the State of New Mexico, and

(b) Overriding royalty of seven and one-half per cent of the value per dry ton of uranium ore, or other ore, removed from the described property in favor of J. Robert Phillips, Jr. and W. C. Gilmore as more clearly specified in the Agreement dated September 4, 1954, by and between J. Robert Phillips, Jr. and W. C. Gilmore, as Sellers, and Richard D. Bokum III, as Buyer, the provisions of which it is agreed are fully known to both parties of this Agreement."

The contract provided that upon execution the promisor and other buyers were to place $15,000 in escrow in an Albuquerque bank, to be released to the promisee upon execution and delivery of the assignment of the permit, at which later time the promisor and other buyers were to pay the remaining balance of the contract purchase price, $55,000, to the promisee.

The $15,000 to be placed in escrow was delivered to Lloyd for the purpose, but was retained by him and was never placed in escrow.

By a letter dated January 11, 1955, the promisee was notified the promisor had elected to void the agreement because its check of the accuracy of the geologic report showed the value of the uranium ore in the property to be at least one-third less than was stated in the report.

Among the issues litigated below were the questions whether intervenors had any interest in the property by virtue of their first refusal option and whether there was a breach of a binding contract on the part of promisor. With respect to intervenors' interest under the option the trial court found that at no time did the intervenors exercise their option and they did not purchase the permit from the promisee within the fifteen-day period; that by the assignment of the option to Lloyd the intervenors had divested themselves of any interest in the option and they had no interest in it or in the permit on the day the contract was drawn between promisor and promisee. The court also found that when the contract was drafted it was the understanding of the parties that the promisor could refuse to consummate the purchase if its investigation resulted in its "dissatisfaction" with the geological report furnished by promisee

and that the contract was never fully executed and was not a binding contract.

The foregoing findings are challenged by intervenors but decision of the questions raised is rendered unnecessary because intervenors' standing to recover upon the contract in any event is deficient in a vital respect. This is covered by the following finding made by the trial court:

> "11. There was no intention on the part of Permian Basin Investment Corporation to assume any obligation, direct or indirect, to the intervening plaintiffs or either of them, and that the said Permian Basin Investment Corporation had no knowledge of the intended payment by Green Hornet Uranium Corporation to the Intervening Plaintiffs or to R. L. Lloyd of the sums hereinabove set forth."

The trial court concluded the intervenors were, at most, incidental beneficiaries under the contract between promisor and promisee.

While intervenors requested a finding contrary to the finding set out above, they do not here urge that the promisor intended to assume any obligation to them or that the promisor had knowledge of the payment promisee intended to make to intervenors out of the purchase price. Intervenors do argue the court should have found they were either creditor or donee beneficiaries, but from our examination of the transcript relating to the circumstances surrounding the execution of the contract sued upon, it is clear there is sufficient testimony to sustain the trial court's finding the promisor had no knowledge of the agreement between promisee and intervenors and Lloyd as to the payment to be made.

Nor can it be held the contract provision, which we have already quoted, is alone sufficient to charge the promisor with an obligation to intervenors or to the promisee for intervenors beyond recognition of intervenors' rights under their contract with Bokum, one of which was the reserved royalty, and the other was the first refusal option. Mere knowledge that C held a first refusal option in a contract with B is not knowledge to A that B under a different agreement intends to confer a benefit on C out of A's performance.

This is not to say that a person may not have rights under a contract executed by others unless he is specifically named and identified as a beneficiary thereunder. Suit may be maintained by the member of a class which is intended to be benefited by a contractual obligation. Southwestern Portland Cement Co. v. Williams, 32 N.M. 68, 251 P. 380, 49 A.L.R. 525; Key v. George E. Breece Lumber Co., 45 N.M. 397, 115 P.2d 622; Fuqua v. Trego, 47 N.M. 34, 133 P.2d 344. Suit may also be maintained by a specific third party for whom a benefit is contracted although he

is not named in the contract and did not know of it at the time. Johnson v. Armstrong & Armstrong, 41 N.M. 206, 66 P.2d 992.

■ But, whatever the nature of the agreement, or the circumstances of law or fact considered in connection therewith, which give rise to liability on the part of the promisor at the suit of a third party beneficiary, and whatever may be the language employed by the courts in recognition of the right of such a beneficiary, the problem of determining whether liability exists remains one of *contract*.

■ Recognizing that it would be impossible to encompass all the third party situations which may conceivably arise under a single general statement, we approve the following statement from Corbin on Contracts, Vol. 4, § 776, pp. 18, 19:

"A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee or of some other person and the contract calls for a performance by the promisor in satisfaction of the obligation; or (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract. A third party may be included within both of these provisions at once, but need not be. One who is included within neither of them has no right, even though performance will incidentally benefit him."

The author has supplemented this statement by adding the proviso that the third party can show by evidence extrinsic to a contract which contains no indication of intent to benefit him that its provisions were in fact intended for his benefit. See the discussion of Isbrandtsen Co. v. Local 1291 of International Longshoremen's Ass'n, 3 Cir., 204 F.2d 495, and United States v. Carpenter, D.C., 113 F.Supp. 327, in the 1956 pocket part of Vol. 4, Corbin on Contracts under §§ 776 and 779.

■ The principle upon which intervenors must be denied recovery is implicit in Corbin's general statement and in all of the third party beneficiary decisions which have been rendered by this court; that the promisor should not be held liable in damages for breach of his contract with the promisee by one whose detriment by its nonperformance could not reasonably have been foreseen by the promisor and by one whose existence (whether specific or general) and interest in the contracted-for performance (whether contingent or direct) was not within the reasonable contemplation of the promisor when the prom-

ise was made. This is but a way of saying, as the lower court did, that intervenors were, at most, incidental beneficiaries under the contract sued upon and as such they are not entitled to recovery upon it. See, Annotation, 81 A.L.R. 1271.

The judgment appealed from should be affirmed.

It is so ordered.

SADLER, McGHEE, COMPTON and KIKER, JJ., concur.