871 P.2d 1343

Eugene JARAMILLO, Personal Representative of the Estate of Theodore R. Jaramillo, deceased; Plaintiff–Appellee,

and

Joe E. King and Linda King, as co-personal representatives of the Estate of Loreen King, Plaintiffs–Appellees,

and

Norman Lovato, Plaintiff–in–Intervention–Appellant,

and

Mary Frances Dimas, Plaintiff–in–Intervention–Appellant and Cross–Appellee

v.

PROVIDENCE WASHINGTON INSURANCE COMPANY, Defendant–Appellant, Cross–Appellant and Appellee.

No. 20191.

Supreme Court of New Mexico.

Feb. 16, 1994.

Civerolo, Wolf, Gralow & Hill, P.A. Ellen M. Kelly, Albuquerque, for appellant Providence Washington Ins. Co.

Montoya, Murphy & Garcia, Donald D. Montoya, Santa Fe, for appellant Lovato.

Jones, Snead, Wertheim, Rodriguez & Wentworth, P.A., Arthur L. Jaramillo, Santa Fe, for appellee Jaramillo.

Berardinelli & Associates, David J. Berardinelli, Santa Fe, for appellees Joe E. and Linda King.

Simons, Cuddy & Friedman, Robert D. Castille, Santa Fe, for appellant Dimas.

## OPINION

RANSOM, Chief Justice.

Each of the parties to this appeal having moved for rehearing on the filing of our opinion on January 19, 1994, which motions we deny, we withdraw that original opinion and substitute the following. We wish to

state that it is not our intention to retreat from long-standing principles and rules of construction in the application and interpretation of insurance policies. Special rules quite rightly apply to such contracts in favor of persons who show that they are within the class of insureds that the provisions to be enforced were intended to benefit. We also wish to state why, despite the urging of both Appellant Providence Washington Insurance Company and Appellee Eugene Jaramillo, we do not believe it is appropriate to decide this case on the present state of the record and briefs of the parties.

This appeal involves uninsured motorist (UM) provisions of a commercial insurance policy. Coverage disputes arose as a result of a head-on collision between two vehicles during the early morning hours of December 16, 1990. One vehicle was owned by Capron Rentals, Inc., a company in the business of renting vehicles to the general public. Loreen King was the driver of the Capron vehicle. King and passenger Theodore Jaramillo were Capron employees and both were killed in the accident. Two other passengers, Mary Frances Dimas and Norman Lovato, were not Capron employees and both were injured.

Joe and Linda King, personal representatives of the estate of Loreen King, and Eugene Jaramillo, personal representative of the estate of Theodore Jaramillo, filed separate complaints for declaratory relief and motions for summary judgment seeking a determination that King and Jaramillo were entitled to stack uninsured motorist bodily injury coverages as named insureds in a policy issued by Providence Washington Insurance Company. The cases were consolidated below. Dimas and Lovato subsequently intervened in the consolidated proceedings to state their separate claims against Providence. In motions for summary judgment, Dimas and Lovato claimed that under the policy they also were expressly entitled to a share of any stacked coverage. Dimas additionally claimed that she was entitled to recover punitive damages under the policy regardless of the death of the tortfeasor.

 The trial court ruled that the Providence policy expressly promises stacking of uninsured motorist bodily injury coverages and that the policy's definition of who is entitled to stack is ambiguous as a matter of law.[1] Believing that it was obliged by precedent, the court then construed this definitional ambiguity against Providence and in favor of King and Jaramillo, ruling that the employees were entitled to stack coverage on Capron's fleet of 100 cars. In separate decisions, the trial court denied the motions of Dimas and Lovato for summary judgment on the stacking issue, foreclosing their claim to a pro-rata share of the stacked policy benefits, and ruled that Dimas could make a claim for punitive damages notwithstanding the fact that the uninsured motorist was killed in the accident.

Under SCRA 1986, 12–201 (Repl. Pamp.1992) (appeal as of right), Providence has appealed from the judgment in favor of King and cross-appealed from the final order allowing Dimas to pursue a claim for punitive damages. Dimas and Lovato have appealed from the summary judgment in favor of Providence on the issue of stacking. Under SCRA 1986, 12–203 (Repl.Pamp.1992) (interlocutory appeals), Providence has been granted an appeal from a partial summary judgment in favor of Jaramillo. Finding that Providence is entitled to a trial on the merits

---

1. This is a "policy stacking" and not a "judicial stacking" case. "Judicial stacking" is a rule of construction applied by the courts based on public policy. Under judicial stacking, a class-one insured is entitled, as a matter of law, to aggregate all UM coverages purchased with separate premiums. *See Morro v. Farmers Ins. Group*, 106 N.M. 669, 670–71, 748 P.2d 512, 513–14 (1988). A class-one insured in judicial stacking refers generally to those persons who are "named insureds" under a UM policy. *Id.* In contrast, "policy stacking" refers to a policy which by its own terms expressly grants a right to stack coverages. If the policy is unambiguous, the "insured" who is entitled to policy stacking is determined by the policy's language and definitions, and the coverage is enforced as written. *See Richardson v. Farmers Ins. Co. of Ariz.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991).

of the stacking issue, we reverse the summary judgments in favor of King and Jaramillo. We affirm the trial court's judgments in favor of Providence and against Dimas and Lovato on the issue of stacking, and reverse on the issue of punitive damages.

■ *Once ambiguity is determined to exist, grant of summary judgment is improper.* On appeal from summary judgment, this Court must determine the applicable law and whether there exist genuine issues of material fact that preclude summary judgment under that law. *See* SCRA 1986, 1–056 (Repl.Pamp.1992); *Agnew v. Libby*, 53 N.M. 56, 57–58, 201 P.2d 775, 776 (1949). In the summary judgments granted in favor of King and Jaramillo, the trial court found that an ambiguity exists in the contract for uninsured motorist coverage. Providence argues that the court used an improper standard by which to resolve the ambiguity, and that the court erred in refusing to consider extrinsic evidence of the intentions of the parties (e.g., specific facts at issue under affidavits).

The court stated that it was bound to construe the ambiguity against the insurer and in favor of coverage, citing to *Horne v. United States Fidelity & Guaranty Co.*, 109 N.M. 786, 791 P.2d 61 (1990), and *Safeco Insurance Co. of America v. McKenna*, 90 N.M. 516, 565 P.2d 1033 (1977), and that it was ignoring the affidavits submitted by Providence that evinced the intent of Capron (the named insured) and Providence. We believe that the trial court did, in fact, base its ultimate disposition of the King and Jaramillo summary judgment motions on an improper rule of construction. The trial court should have denied the motions and allowed the parties to go forward with evidence that would enable the court to determine the meaning of the contract during a trial on the merits.

*Under the facts of this case, Horne does not control the interpretation of "named insured".* It is well settled that the construction of an insurance policy is governed generally by the law of contracts. *Vargas v. Pacific Nat'l Life Assurance Co.*, 79 N.M. 152,

155, 441 P.2d 50, 53 (1968). In this case, the trial court concluded that the insurance policy is ambiguous as to whether employees of Capron are entitled to stack coverage on Capron's fleet of vehicles. Applying *Horne*, the trial court construed the ambiguous policy language against Providence and allowed King and Jaramillo to stack coverage. In *Horne*, however, the issue of contract interpretation was whether an employee injured while occupying an insured business vehicle can stack benefits on other covered vehicles when class-one insureds under the policy are defined as "you or any family member." *See Horne*, 109 N.M. at 787, 791 P.2d at 62. There, a corporation as the named insured was "you", and this gave rise to an ambiguity as to whether "any family member" referred to employees of the company. *Id.* at 786–88, 791 P.2d at 61–63. The Court construed the ambiguity in favor of the employees, allowing them to stack coverage as "family members".

The Providence policy, on the other hand, defines class-one insureds as "you" and, *if* "you" is an individual, then family members are included as class-one insureds. "You" is defined as the named insured, Capron Rentals, Inc. The trial court, in its judgments on the motions of King and Jaramillo, found that neither were "family members" because the policy expressly limits coverage for family members to those situations where "you" is an individual rather than a corporation. We agree with the trial court that the Providence policy gives rise to no ambiguity under coverage for family members as found by the majority to exist in *Horne*. Nonetheless, the trial court concluded that the policy's language is ambiguous because the word "you" as applied to a corporation is susceptible to different meanings and, applying *Horne*, construed the ambiguous language against Providence thus permitting King and Jaramillo to stack coverage. We find that the trial court's application of *Horne* under the facts of this case is problematic and we set forth alternative principles of law to be applied to this case on remand and in future cases of this type.

■ *Court may consider extrinsic evidence to make preliminary finding on ques-*

*tion of ambiguity.* Providence argues that the court erroneously concluded that the policy is ambiguous. It contends that because "you" is defined as the named insured and the corporation is the named insured, and because only the named insured is entitled to stack coverage, no ambiguity exists—the employees clearly are insured only as occupants of the vehicle. The court concluded that an ambiguity exists because the uninsured motorist provisions expressly allow the named insured to stack, but the named insured is a corporation not capable of sustaining bodily injury. The court refused to consider extrinsic evidence as to circumstances under which the parties contracted.

The court's decision having been reached before publication of our opinions in *C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 817 P.2d 238 (1991), and *Mark V, Inc. v. Mellekas,* 114 N.M. 778, 845 P.2d 1232 (1993), it appears that the court considered only the contract language in arriving at its conclusion that an ambiguity exists. In *C.R. Anthony* and *Mark V* we held that a court may consider the context in which a contract was made to determine whether the parties' words are ambiguous, and we overruled cases to the contrary. *See C.R. Anthony,* 112 N.M. at 508–09, 817 P.2d at 242–43; *Mark V,* 114 N.M. at 781, 845 P.2d at 1235. We earlier had retreated from the "four-corners" standard in holding that the parol evidence rule did not bar admission of extrinsic evidence to determine the circumstances under which the parties contracted and the purpose of the contract. *See Levenson v. Mobley,* 106 N.M. 399, 403, 744 P.2d 174, 178 (1987).

We believe the court may have limited its review to the "four corners" of the agreement. While we are reversing the trial court on other grounds, on remand the court may allow extrinsic evidence and reconsider whether an ambiguity exists. Although, as we held in *Herrera v. Mountain States Mutual Casualty Co.,* 115 N.M. 57, 846 P.2d 1066 (1993), "you" quite unambiguously is the corporate entity, the applicability of stacking to employees as intended beneficiaries may or may not be found ambiguous when considering circumstances other than the contract language.

■ *Ambiguities need not be construed in favor of coverage when question is who is to be included as a named insured qualifying for class-one coverage.* Citing to *McKenna,* the *Horne* opinion stated: "It is axiomatic in New Mexico insurance law that ambiguities in an insurance policy are to be construed against the insurer." *Horne,* 109 N.M. at 787, 791 P.2d at 62. While that is a correct statement of the general rule of construction, that general rule is not applicable to situations in which a third party who is not expressly named as the insured or who is not an acknowledged family member is seeking coverage under a policy that has not been purchased by the third party. A careful analysis of *McKenna* and other New Mexico cases that have adopted the general rule reveals that all of the cases applying the construction except *Horne* concerned the rights of an expressly named insured or acknowledged family member. Even when an ambiguity concerns an expressly named insured, we have held that the rule "does not preclude a court from examining the facts of a case to determine what the parties intended the contractual language to mean." *Crawford Chevrolet, Inc. v. National Hole-in-One Ass'n,* 113 N.M. 519, 521, 828 P.2d 952, 954 (1992) (footnote omitted); *see also Herrera,* 115 N.M. at 59, 846 P.2d at 1068 (citing with approval *Atlas Assurance Co. v. General Builders,* 93 N.M. 398, 401, 600 P.2d 850, 853 (Ct.App.1979) (holding that third persons not parties to a contract of insurance usually are not entitled to a construction in their favor "in determining whether that third person is an insured under the policy")). To the extent that *Horne* implies that all insurance contracts *must* be construed in favor of coverage, or that the general rule applies in *all* situations, it is overruled.

■ "In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent." *Mark V,* 114 N.M. at 782, 845 P.2d at 1236. In cases in which the question is whether a

third-party beneficiary is entitled to coverage, if the premium-paying insured and the insurer agree as to what they intended, that should be controlling. *See Crawford Chevrolet,* 113 N.M. at 521, 828 P.2d at 954. However, if the premium-paying insured had no intent one way or the other (and it appears the trial court has not addressed that issue), testimony of the insurer that. it had a unilateral, subjective intent not to include employees or other third parties as class-one beneficiaries is not determinative. The parties must adduce evidence of the objective intentions of the parties to the contract, such as premiums paid for coverage. In the absence of extrinsic evidence of intent, the third-party beneficiary may well take advantage of applicable rules of contract construction. *See Mark V,* 114 N.M. at 782, 845 P.2d at 1236. As stated above, however, if the ambiguity gives rise to the question whether a third party is or is not the intended beneficiary of specific stacking provisions, the third party is not entitled to the rule of construction that ambiguities must be decided against the insurer. The third party has the burden of proof.

On motions for rehearing, Jaramillo and Providence argue a point that from the beginning has been particularly difficult for this Court to resolve: What useful purpose does a remand of this cause serve? If the only evidence of the objective intentions of the parties lies in the ambiguous language of the policy itself, then must not this Court "resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation"? *Id.* (citing *C.R. Anthony,* 112 N.M. at 510 n. 5, 817 P.2d at 244 n. 5 (court's resolution of ambiguity is one of law when employing rules of contract interpretation without benefit of evidence of surrounding facts and circumstances)). How could coverage about which the employer had no understanding have been contemplated by the employer to bene-

fit the employees of Capron? In the final analysis, as stated above under the heading "Once ambiguity is determined to exist, grant of summary judgment is improper," we do not believe all *material* facts before the court necessarily dictated application of accepted canons of contract construction in lieu of a trial on the merits. Further, while we will uphold or reverse a judgment of the trial court when legally mandated regardless of the trial court's rationale, we will not do so if the mandate has been clouded by proceedings that were truncated or misdirected by reason of the trial court's erroneous conclusions. It is far preferable for this Court, even on a question of law, to have the advantage of a record on dispositive issues that are thoughtfully developed in the lower court and briefed by the parties. Here, the parties basically have favored us only with argument and authorities on questions of ambiguity and the controlling effect of *Horne.*

We further note that the trial court arrived at its conclusion that the employees must be entitled to stack because it believed that, if the employees could not stack, then no one could take advantage of the express policy-stacking language. This, in the court's mind, would result in the corporation having paid for nothing. This is an erroneous conclusion. The corporation paid for and received statutory minimum limits of uninsured motorist coverage on all vehicles and their occupants [2] and also was entitled to stack the policies for property damage. King contends that because the policy expressly provides stacking of bodily injury coverage, the trial court *must* find someone who may stack—an "insured class". The question for the court, however, is not *who* may stack—it is whether *employees* may stack. It is possible that the parties intended the corporate officers and directors or shareholders to be covered by the policy, for example, although that is not the question before the court. *See, e.g., Hager v. American West Ins. Co.,* 732 F.Supp. 1072, 1075 (D.Mont.1989) (holding that share-

---

**2.** The pro-rata shares of the "per accident" policy limits for the accident vehicle have been paid

to the parties.

holder in closely-held corporation was additional named insured under UM provisions of corporate policy); *Holloway v. Nationwide Mut. Ins. Co.*, 376 So.2d 690, 694 (Ala.1979) (stating that executive officer of corporation would be class-one insured even though corporation was named insured). Just because stacked bodily-injury coverage was expressly provided does not conclusively mean that employees were entitled to the coverage.

■ *At trial, King and Jaramillo have burden of proving that they were intended beneficiaries of the stacking provisions.* King and Jaramillo, who are not parties to the contract, essentially claim that they are entitled to the stacking provisions of the policy as donee third-party beneficiaries. In *Permian Basin Investment Corp. v. Lloyd*, 63 N.M. 1, 7, 312 P.2d 533, 537 (1957), we approved the following statement from 4 Arthur L. Corbin, *Corbin on Contracts* § 776, at 18–19 (1951):

> A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee ... or (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract. A third party may be included within both of these provisions at once, but need not be. One who is included within neither of them has no right, even though performance will incidentally benefit him. [Footnotes omitted.]

We supplemented the above principle with the proviso that "the third party can show by evidence extrinsic to a contract which contains no indication of intent to benefit him that its provisions were in fact intended for his benefit." *Permian Basin*, 63 N.M. at 7, 312 P.2d at 537. We also expressed that implicit within the above general statements is that

> the promisor should not be held liable in damages for breach of his contract with the promisee by one whose detriment by

its nonperformance could not reasonably have been foreseen by the promisor and by one whose existence (whether specific or general) and interest in the contracted-for performance (whether contingent or direct) was not within the reasonable contemplation of the promisor when the promise was made.

*Id.* at 7–8, 312 P.2d at 537.

■ Intent to benefit a third party must appear either from the contract itself or from other evidence that the person claiming to be the beneficiary is an intended beneficiary. *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987). The burden of proof is on the claimant to show that he or she belongs to the class of intended beneficiaries. *Hoge v. Farmers Mkt. & Supply Co.*, 61 N.M. 138, 143, 296 P.2d 476, 479 (1956). The intent to benefit third parties as occupants of an insured vehicle does not prove an intent to benefit third parties as named insureds entitled to stack coverage. A third party is not entitled to rules of construction afforded a class of insureds until the third party has established that he or she is a member of the class.

■ *No ambiguity in policy regarding nonemployee occupants; summary judgment appropriate.* In denying the motions for summary judgment of Dimas and Lovato, the trial court found that there is no policy ambiguity that would give them the reasonable expectation that they could stack or that they are not excluded from the description of persons eligible to stack. Dimas and Lovato urge that ambiguity exists not only in who is the named insured, but also in the policy provisions setting out the limits of insurance. They claim that there is an irreconcilable conflict between the paragraph which states that the most the company will pay for bodily injury is the limit for each person shown in the schedule applicable to each covered auto ($25,000), and its subparagraph which states that the limit is the sum of the limits of the bodily injury for each person if there is more than one covered auto. They urge this Court to follow *Curtis v. Home Insurance Co.*, 392

N.W.2d 44, 45–46 (Minn.Ct.App.1986), wherein the court found two similar provisions to be ambiguous. In regard to *Curtis* we note the court there found that the employees had no reasonable expectation to entitlement of stacked benefits even in the face of the ambiguity in the policy.

Dimas and Lovato also urge application of *Federal Insurance Co. v. Century Federal Savings & Loan Ass'n*, 113 N.M. 162, 824 P.2d 302 (1992). The holding of *Federal* is that no construction is required when two clauses are unambiguous, but rather are repugnant to one another; the court should "refuse to apply the clause that deprives the insured of the insurance coverage which the insured reasonably understood was afforded by the policy for which premiums were paid." *Id.* at 169, 824 P.2d at 309. Implicit within this principle is the understanding that where one clause provides an exception to a clause of general application *without* making meaningless the general clause granting coverage, the exception will be effective.

In this case, the clause of general application states that the maximum UM coverage for bodily injury to a single person is $25,000. The subparagraph that provides stacking, if there is more than one covered auto, quite specifically is limited to bodily injury sustained by "you or any 'family member' " and states:

> The most we will pay for "bodily injury" sustained ... by an "insured" other than you or any "family member" is that "insured's" pro-rata share of the "Bodily Injury" for each person limit shown *in the Schedule for this coverage* [in which you or any family member will also be entitled to a pro-rata share].

(Emphasis added.) We construe the phrase "in the Schedule for this coverage" to apply to the $25,000 each person limit as distinguished from "*the sum* of the limits for 'Bodily Injury' for each person shown in the Schedule applicable to each covered 'auto' " in the stacking provision for "you or any 'family member'." The subparagraph is not repugnant to the general granting clause.

Dimas and Lovato further argue that if stacking is not allowed, then the premium paid for bodily injury coverage was a nullity. As mentioned above, that is not factually correct. The policy provided for bodily injury coverage for all occupants in the amounts required by statute.

■ *Punitive damages not recoverable from estate of deceased tortfeasor.* Dimas argues that an insured's right to recover punitive damages under the UM provision is a matter of contract, so whether the tortfeasor survives an accident is inconsequential. Dimas relies on *Stinbrink v. Farmers Insurance Co. of Arizona*, 111 N.M. 179, 180–81, 803 P.2d 664, 665–66 (1990), in which this Court held that a contract clause excluding coverage for punitive damages against uninsured motorists conflicted with statutory law, and that right to recovery could not be contracted away. We believe that Dimas has misconstrued *Stinbrink*, as that case does not require recovery for claims that are barred as a matter of law.

The UM statute provides that UM insurance must be provided in at least the minimum limits for bodily injury or death and for injury to or destruction of property "for the protection of persons insured thereunder who are *legally entitled* to recover damages from owners or operators of uninsured motor vehicles...." NMSA 1978, § 66–5–301(A) (Repl.Pamp.1989) (emphasis added). If Dimas is not legally entitled to sue the tortfeasor's estate for punitive damages, her claim for UM coverage for those damages must fail.

Although this Court never has passed on the issue of whether the death of a tortfeasor serves as a bar to recovery of punitive damages, the Court of Appeals in *State Farm Mutual Automobile Insurance Co. v. Maidment*, 107 N.M. 568, 574, 761 P.2d 446, 452 (Ct.App.), *cert. denied,* 107 N.M. 413, 759 P.2d 200 (1988), held that an insurer "may assert the death of the uninsured motorist as a bar to recovery of punitive damages." 107 N.M. at 574, 761 P.2d at 452. According to *Maidment,* to hold otherwise would under-

mine the rationale of *Stewart v. State Farm Mutual Automobile Insurance Co.,* 104 N.M. 744, 726 P.2d 1374 (1986), *modified on other grounds by Stinbrink v. Farmers Ins. Co. of Ariz.,* 111 N.M. 179, 803 P.2d 664 (1990). We held in *Stewart* that "an insured may recover punitive damages from his insurer if he would be legally entitled to recover them from the uninsured tortfeasor," and we stated that the public policy underlying the award of punitive damages was to punish the tortfeasor. 104 N.M. at 746–47, 726 P.2d at 1376–77.

The purpose of requiring an insurer to provide UM coverage is to be sure that an injured insured is compensated for injuries even when the tortfeasor is financially irresponsible. *See Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 557, 787 P.2d 835, 837 (1990); *Stewart,* 104 N.M. at 746, 726 P.2d at 1376; *Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 329, 533 P.2d 100, 102 (1975). In the past, when holding that insurance policies may cover punitive damages, we have relied on the principle that the purpose of punitive damages (to punish the tortfeasor) is not diluted by requiring the insurance company to pay the damages because the insurer can always sue the tortfeasor for recovery of the damages. *See Baker v. Armstrong,* 106 N.M. 395, 397, 744 P.2d 170, 172 (1987); *Stewart,* 104 N.M. at 747, 726 P.2d at 1377. When the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages.

We are supported in reaching this conclusion by a majority of the states that also have passed on this issue. Several states have statutes that explicitly preclude recovery of punitive damages from the estate of a deceased tortfeasor. *See Hofer v. Lavender,* 679 S.W.2d 470, 472 n. 2 (Tex.1984). In those states in which there is no such statute, the decisions most often turn on the reasons why each state assesses punitive damages. For example, in Texas the purposes of punitive damages include punishment of the tortfeasor, to serve as an example to others, to reimburse for losses too remote to be consid-

ered as elements for strict compensation, as an example for the good of the public, to compensate for inconvenience and attorney's fees, and as compensation to the sufferer. *See id.* at 474–75. Because of these varied reasons for assessing punitive damages, the Texas court held that there exists a right to collect punitive damages from the estate of a deceased tortfeasor. *Id.* at 475; *see also Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8, 12 (1982) (holding that the right continues after tortfeasor's death because the damages serve other equally important functions other than punishment of the wrongdoer). The majority of states, however, bar the recovery of those damages, concluding that to punish the estate ignores the central purpose of punitive damages, which is to punish the tortfeasor and to deter him from repeating the wrongful act. *See, e.g., Barnes v. Smith,* 305 F.2d 226, 231 (10th Cir.1962) (applying the majority view in a New Mexico diversity of citizenship case); *Fehrenbacher v. Quackenbush,* 759 F.Supp. 1516, 1521–22 (D.Kan. 1991); *Lohr v. Byrd,* 522 So.2d 845, 846–47 (Fla.1988); *Rowen v. Le Mars Mut. Ins. Co. of Iowa,* 282 N.W.2d 639, 661 (Iowa 1979); *Thompson v. Estate of Petroff,* 319 N.W.2d 400, 408 (Minn.1982); *Allen v. Anderson,* 93 Nev. 204, 562 P.2d 487, 489–90 (1977); *see also* Restatement (Second) of Torts § 926 (1977) ("Under statutes providing for the survival ... of tort actions, the damages ... for which the tortfeasor is responsible are not affected by the death of either party before or during trial except that ... the death of the tortfeasor terminates liability for punitive damages."); Jay M. Zitter, Annotation, *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged,* 30 A.L.R.4th 707 § 4 (1984 & 1992 Supp.).

In New Mexico, the purpose of punitive damages is two-fold: "Such additional damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses." SCRA 1986, 13–1827 (Repl.Pamp.1991); *see also Stewart,* 104 N.M. at 746, 726 P.2d at 1376 (recognizing that purpose of punitive damage recovery

is punishment of the tortfeasor, not compensation of the victim). We believe that the purposes of punishment and deterrence are not accomplished by enabling recovery of punitive damages from the estate of deceased tortfeasors. We affirm *Maidment*. Therefore, the partial grant of summary judgment in favor of Dimas and against Providence on this issue is reversed.

*Conclusion.* We reverse the summary judgments in favor of King and Jaramillo, affirm the judgments in favor of Providence and against Dimas and Lovato, reverse on the issue of recovery of punitive damages, and remand for further disposition consistent with this opinion.

IT IS SO ORDERED.

BACA, MONTGOMERY, FRANCHINI and FROST, JJ., concur.