[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Whetstone v. Binner,* Slip Opinion No. 2016-Ohio-1006.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1006

WHETSTONE, APPELLEE, *v.* BINNER, ADMR., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Whetstone v. Binner,* Slip Opinion No. 2016-Ohio-1006.]

*Tort actions—Damages—Death of tortfeasor—Where liability has been determined while tortfeasor was alive, punitive damages are available to plaintiff after tortfeasor's death, and where otherwise appropriate, award may be imposed against tortfeasor's estate.*

(No. 2014-1462—Submitted October 28, 2015—Decided March 15, 2016.)

APPEAL from the Court of Appeals for Fairfield County,

No. 13 CA 47, 2014-Ohio-3018.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we address whether punitive damages can be awarded against the estate of a deceased tortfeasor. We conclude that a punitive-damages award is available in the limited circumstances presented here.

## RELEVANT BACKGROUND

{¶ 2} On June 29, 2010, Christine Whetstone dropped off her daughters, O.C. and L.C., at the home of their great-aunt, Roxanne McClellan, who was to baby-sit. The girls were just over five and two years old, respectively. When Whetstone returned to McClellan's home, she entered a bedroom and found McClellan with one hand on O.C.'s neck and the other hand holding a pillow over O.C.'s face. Whetstone struggled with McClellan and eventually was able to free O.C. Whetstone fled the house with O.C. and L.C., who had remained asleep in the bedroom during the incident.

{¶ 3} Whetstone immediately reported the incident to the police and took O.C. to the emergency room. There, the physician noted O.C.'s injuries, including a mark on her cheek, scratches on her chin and chest, and a hemorrhage in her eye.

{¶ 4} Whetstone and her daughters attended counseling after the incident. All three were eventually diagnosed with posttraumatic stress disorder. Whetstone reported that she had nightmares, anxiety, and anger, while her daughters had trouble sleeping and continued to fear McClellan.

{¶ 5} On October 1, 2010, Whetstone, individually and on behalf of her daughters, filed a civil suit against McClellan for assault, false imprisonment, emotional distress, and loss of consortium. She requested compensatory and punitive damages.

{¶ 6} On November 18, 2010, after McClellan failed to respond to the complaint, the trial court entered a default judgment against McClellan. The court scheduled an evidentiary hearing on damages for January 6, 2011.

{¶ 7} On December 29, 2010, McClellan moved for relief from the default judgment, asserting that she was unaware of the complaint until after the deadline for filing an answer had passed. She disclosed that she had been diagnosed with terminal cancer and had been undergoing chemotherapy treatments since October 2010, and she requested a postponement of the damages hearing because she was

scheduled for a treatment on the same day as that hearing. The hearing was postponed.

{¶ 8} On April 7, 2011, the court denied McClellan's request for relief from the default judgment and stated that it would reschedule a damages hearing by separate entry.

{¶ 9} McClellan died on April 22, 2011, before the damages hearing was rescheduled. On December 30, 2011, the court granted Whetstone's motion to substitute Erin Binner, the administrator of McClellan's estate, as a party.

{¶ 10} In April 2012, the court scheduled a damages hearing at Whetstone's request. Binner obtained counsel and the parties engaged in discovery. The damages hearing commenced on July 26, 2012, and concluded on December 3, 2012.

{¶ 11} At the damages hearing, the court heard testimony from Whetstone, O.C., and Dawn McCoy, a licensed clinical social worker who provided counseling services to Whetstone and her daughters. Binner appeared and was represented by counsel. The parties filed posthearing briefs containing their closing arguments. Notably, although Binner argued that punitive damages should not be awarded because no evidence of McClellan's malice had been presented, she did not object to the request for punitive damages on the basis of McClellan's death either during the hearing or in the posthearing brief.

{¶ 12} On May 7, 2013, the trial court awarded limited compensatory damages to Whetstone and L.C. and $50,000 in compensatory damages to O.C. The court concluded that punitive damages could not be properly awarded against the estate of a deceased tortfeasor. Because punitive damages were not awarded, the court determined that attorney fees were also unavailable.

{¶ 13} The Fifth District Court of Appeals reversed, holding that an award of punitive damages against a deceased tortfeasor is permissible under Ohio law. 2014-Ohio-3018, 15 N.E.3d 905, ¶ 26. The appellate court remanded for the trial

court to determine whether to impose punitive damages and a corresponding award of attorney fees.

{¶ 14} We accepted the estate's discretionary appeal on whether punitive damages can be awarded against the estate of a deceased tortfeasor. 141 Ohio St.3d 1473, 2015-Ohio-554, 25 N.E.3d 1080.

## ANALYSIS

{¶ 15} The purpose of punitive damages is twofold; to punish the tortfeasor and to deter similar conduct. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (1994). "The policy of awarding punitive damages in Ohio is both to punish the offending party and to set him up as an example to others, thereby deterring others from similar behavior." *Cabe v. Lunich*, 70 Ohio St.3d 598, 601-602, 640 N.E.2d 159 (1994). In other words, deterrence is intended to be both specific to a particular tortfeasor and general as an example to others.

{¶ 16} Ohio law is well settled that punitive damages are available for personal injury or property loss caused by malice or " ' "intentional, reckless, wanton, willful and gross acts." ' " *Rubeck v. Huffman*, 54 Ohio St.2d 20, 23, 374 N.E.2d 411 (1978), quoting *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 184, 327 N.E.2d 654 (1975), quoting the appellants' brief. Pursuant to R.C. 2305.21, the right to punitive damages continues when an injured plaintiff has died and the plaintiff's claim is pursued by a representative of his or her estate. *Id.* But the specific question before the court here—whether punitive damages can be imposed against a deceased tortfeasor—is a matter of first impression in this court.

{¶ 17} The appellate court correctly noted that the majority of other jurisdictions prohibit punitive-damages awards against a deceased tortfeasor. 2014-Ohio-3018, 15 N.E.3d 905, ¶ 23; *see In re Estate of Vajgrt*, 801 N.W.2d 570, 576-577 (Iowa 2011). Some jurisdictions have adopted this approach through legislative enactments, and others through court rulings. *Id.* at 576. "The reasoning behind these decisions is essentially that the primary purposes of imposing punitive

4

damages are not furthered when the tortfeasor is deceased," because the deterrence element of awarding punitive damages is speculative if there is a perception that the estate, rather than the tortfeasor, is being punished. *G.J.D. v. Johnson*, 552 Pa. 169, 172-173, 713 A.2d 1127 (1998).

{¶ 18} Nonetheless, a minority of jurisdictions have allowed recovery of punitive damages when the tortfeasor has died. 2014-Ohio-3018, 15 N.E.3d 905, ¶ 25; *Vajgrt* at 577. The Pennsylvania Supreme Court in *G.J.D.* summarized the reasoning of the minority approach in three main points. First, even when the tortfeasor dies, punitive damages still serve the general purpose of deterrence. *G.J.D.* at 176. Second, the heirs and beneficiaries of the deceased tortfeasor's estate "are in essentially the same financial position as if the tortfeasor were living at the time damages were awarded," because an award prior to death would have reduced the assets available to the estate. *Id.* at 176-177. And third, there are safeguards to protect against an arbitrary award, including jury instructions that clarify that the damages awarded by the jury will be imposed against the estate. *Id.* at 177.

{¶ 19} In Ohio, there is no statutory provision that precludes imposing punitive damages on a deceased tortfeasor. We note that the cases from states that have adopted the majority view that were cited by the appellate court do not involve a tortfeasor who was alive at the time the trial court entered judgment on the issue of the tortfeasor's liability. 2014-Ohio-3018, 15 N.E.3d 905, ¶ 23. Rather, in each of the cited cases, the tortfeasor had died prior to a judgment or jury verdict on liability. This distinction is significant because the availability of punitive damages is triggered by liability for compensable harm.

{¶ 20} Punitive damages are not an independent cause of action; rather, they arise incident to compensable harm. *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 12-13. Punitive damages are available in a tort action when compensatory damages are recoverable and the defendant's actions or omissions demonstrate malice or aggravated or egregious fraud. R.C.

2315.21(C)(1) and (2). The plaintiff bears the burden to establish entitlement to punitive damages by clear and convincing evidence. R.C. 2315.21(D)(4). But an award of punitive damages is not automatic. Even when a plaintiff can establish entitlement to punitive damages, whether to impose punitive damages, and in what amount, is left to the trier of fact.

{¶ 21} Here, the trial court entered a default judgment on November 18, 2010, five months before McClellan's death in April 2011. And prior to McClellan's death, the trial court denied her request for relief from the default judgment. Pursuant to Civ.R. 8(D), there could be no dispute regarding McClellan's liability as alleged in the complaint because those allegations were deemed admitted when not denied in a responsive pleading. Thus, the court determined before McClellan's death that she was liable for assault, false imprisonment, emotional distress, and loss of consortium and that these acts were committed with malice and were egregious. Therefore, McClellan, and her estate after her death, faced the potential award of punitive damages.

{¶ 22} The liability determination against McClellan triggered the availability of compensatory and punitive damages while McClellan was alive. Following the entry of default judgment, all that remained was a damages hearing in order for the trier of fact to determine the amount of damages, if any.

{¶ 23} But for the postponement of the damages hearing at McClellan's request, the damages hearing could have occurred while McClellan was alive. Even after her death, Binner participated in the hearing on damages as a representative of McClellan's estate. The trial court awarded compensatory damages, but sua sponte declined to award punitive damages due to McClellan's death. It was error to do so.

{¶ 24} We conclude that in cases in which liability has been determined while the tortfeasor is alive, punitive damages are available to the plaintiff. To hold otherwise would send a message that by delaying a damages hearing, a defendant

6

or his or her estate might avoid the award of punitive damages. Allowing an award of punitive damages when liability has been determined prior to a tortfeasor's death still accomplishes the general deterrence purpose of such awards. *See G.J.D.*, 552 Pa. at 176 ("The deterrent effect on the conduct of others is no more speculative in the instant case than in cases where the tortfeasor is alive").

{¶ 25} McClellan's death is not without relevance in the punitive-damages context, however. At a punitive-damages hearing, the trier of fact may consider that McClellan is not present to testify and that a punitive-damages award will be imposed against the estate. *See id.* at 177.

{¶ 26} We do not reach whether McClellan's actions warrant a punitive-damages award in any amount. We conclude only that a hearing on punitive damages can proceed.

## CONCLUSION

{¶ 27} For the foregoing reasons, we affirm the judgment of the court of appeals, and we remand to the trial court for a hearing on punitive damages and attorney fees.

Judgment affirmed
and cause remanded.

PFEIFER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents with an opinion in which KENNEDY, J., joins.

LANZINGER, J., dissents with an opinion in which KENNEDY, J., joins.

_____

**O'DONNELL, J., dissenting.**

{¶ 28} Respectfully, I dissent.

{¶ 29} The purpose of punitive damages is to punish the tortfeasor and deter certain conduct. *Sivit v. Village Green of Beachwood, L.P.*, 143 Ohio St.3d 168, 2015-Ohio-1193, 35 N.E.3d 508, ¶ 7. Because the purpose of awarding punitive damages is to punish the tortfeasor, in my view, punitive damages may not be

awarded against the estate of a tortfeasor.  Such an assessment does not serve that purpose.

**Facts and Procedural History**

{¶ 30} Christine Whetstone, individually and on behalf of her two minor daughters, filed a complaint against her aunt, Roxanne McClellan, for assault, battery, false imprisonment, emotional distress, and loss of consortium.  McClellan did not respond to the complaint, and as a result, the trial court entered a default judgment against her and scheduled a hearing on damages.  McClellan moved for relief from the default judgment and requested a continuance of the damages hearing because it had been scheduled on the same day as one of her cancer treatments.  The trial court denied the motion for relief and determined that the continuance request was moot because the court did not rule on it until after the hearing date had passed.  The court notified the parties that it would reschedule the damages hearing.  However, before it did so, McClellan died, and as a result, the trial court substituted Erin Binner, the administrator of her estate, as a party.  The court then awarded compensatory damages to Whetstone and her daughters but sua sponte ruled that it could not award punitive damages against the estate of a tortfeasor and therefore also could not award attorney fees.

{¶ 31} In a two-to-one decision, the Fifth District Court of Appeals reversed the trial court and adopted the position of a minority of courts in other states that punitive damages may be assessed against a tortfeasor's estate.

{¶ 32} Binner now appeals that judgment.

**Law and Analysis**

{¶ 33} " 'The purpose of punitive damages *is not to compensate a plaintiff*, but to *punish and deter* certain conduct.' "  (Emphasis added.)  *Sivit*, 143 Ohio St.3d 168, 2015-Ohio-1193, 35 N.E.3d 508, ¶ 7, quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (1994).  This court has stated:

"[A] punitive damages award is more about [the] defendant's behavior than the plaintiff's loss." [*Wightman v. Consol. Rail Corp.*, 86 Ohio St.3d 431, 439, 715 N.E.2d 546 (1999).] The focus of the award should be the defendant, and the consideration should be what it will take to bring about the *twin aims of punishment and deterrence as to that defendant*.

(Emphasis added.) *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, ¶ 178. We have also stated that the "purpose of punitive damages is to *punish the offending party and make the offender an example to others* so that they might be deterred from similar conduct." (Emphasis added.) *State Farm Mut. Ins. Co. v. Blevins*, 49 Ohio St.3d 165, 168, 551 N.E.2d 955 (1990).

**{¶ 34}** The majority attempts to separate the goals of punishment and deterrence as to a specific tortfeasor from the goal of general deterrence and concludes that "[a]llowing an award of punitive damages [against a tortfeasor's estate] when liability has been determined prior to a tortfeasor's death still accomplishes the general deterrence purpose of such awards." Majority opinion at ¶ 24.

**{¶ 35}** The Supreme Court of Florida has explained:

"The punishment actually is inflicted upon [the tortfeasor's] heirs. Separation of the 'punitive' and 'exemplary' aspects of [punitive damages] awards is unjustified because general deterrence logically depends upon the perception of punishment suffered by the wrongdoer. *When that punishment is diffused and unjustly inflicted upon the innocent, through a doctrine analogous to attainder, the deterrent effect is frustrated.* It is unrealistic to suppose that such

awards deter other prospective tortfeasors, especially if the criminal laws fail to do so."

(Emphasis added by Florida Supreme Court.) *Lohr v. Byrd*, 522 So.2d 845, 846 (Fla.1988), quoting *Byrd v. Lohr*, 488 So.2d 138, 139 (Fla.App.1986); *see also Doe v. Colligan*, 753 P.2d 144, 146 (Alaska 1988) ("general deterrence depends significantly upon the punishment function of an award of punitive damages. Since the deceased tortfeasor cannot be punished, the general deterrent effect becomes speculative at best * * *").

{¶ 36} The dead cannot be punished or deterred, and "[w]hen the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to recover those damages." *Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 345, 871 P.2d 1343 (1994).

## Conclusion

{¶ 37} Assessing punitive damages against a tortfeasor's estate neither punishes the tortfeasor nor deters similar conduct. The judgment of the appellate court should be reversed, and the judgment of the trial court should be reinstated.

{¶ 38} For these reasons, I dissent.

KENNEDY, J., concurs in the foregoing opinion.

_____

**LANZINGER, J., dissenting.**

{¶ 39} Even assuming that general deterrence is on equal footing with the goals of punishing and deterring the tortfeasor by awarding punitive damages, none of these purposes is served by meting out punishment to the dead. Because I believe that punitive damages cannot be imposed against the estate of a deceased tortfeasor, I respectfully dissent.

**{¶ 40}** Until the Fifth District Court of Appeals' decision in this case, Ohio courts have taken the position that punitive damages were not available against a deceased tortfeasor. *Mongold v. Estate of Gilbert*, 114 Ohio Misc.2d 32, 36, 758 N.E.2d 1245 (C.P.2000); *Friedman v. Labos,* 23 Ohio Law Abs. 217, 1936 WL 2151, at *6 (7th Dist.1936). Other jurisdictions believed this to be so. *Firestone v. Galbreath,* 895 F.Supp. 917, 933 (S.D.Ohio 1995); *Boyd v. Smith*, S.D.Ohio No. 2:12-CV-814, 2014 WL 1050080, *11 (Mar. 14, 2014), fn. 3; *Kovac v. Barron*, 2014 IL App (2d) 121100, 6 N.E.3d 819, ¶ 87; *Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 138 (Ind.2005), fn. 3; *In re Vajgrt*, 801 N.W.2d 570, 576 (Iowa 2011), fn. 3.

**{¶ 41}** I respectfully dissent from the decision to affirm the departure from Ohio's previous position. I would hold instead that punitive damages abate at the death of the tortfeasor, which is the majority view in the United States. *Fehrenbacher v. Quackenbush,* 759 F.Supp. 1516, 1521-1522 (D.Kan.1991); *Sanchez v. Marquez*, 457 F.Supp. 359, 364 (D.Colo.1978); *Doe v. Colligan,* 753 P.2d 144, 146 (Alaska 1988); *Evans v. Gibson,* 220 Cal. 476, 489-490, 31 P.2d 389 (1934); *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 938-940 (D.C.1995); *Lohr v. Byrd,* 522 So.2d 845, 846-847 (Fla.1988); *Morris v. Duncan,* 126 Ga. 467, 470, 54 S.E. 1045 (1906); *Crabtree,* 837 N.E.2d at 138-140; *Stewart v. Estate of Cooper,* 102 S.W.3d 913, 915-916 (Ky.2003); *Edwards v. Ricks,* 30 La.Ann. 926, 928 (1878); *Prescott v. Knowles,* 62 Me. 277, 279 (1874); *Thompson v. Estate of Petroff,* 319 N.W.2d 400, 408 (Minn.1982); *Hewellette v. George,* 68 Miss. 703, 710, 9 So. 885 (1891), *overruled on other grounds, Glaskox ex rel. Denton v. Glaskox,* 614 So.2d 906, 907 (Miss.1992); *Allen v. Anderson,* 93 Nev. 204, 207-209, 562 P.2d 487 (1977); *Jaramillo v. Providence Wash. Ins. Co.,* 117 N.M. 337, 344-346, 871 P.2d 1343 (1994); *Gordon v. Nathan,* 43 A.D.2d 917, 352 N.Y.S.2d 464, 465 (1974); *Harrell v. Bowen,* 179 N.C.App. 857, 859-860, 635 S.E.2d 498 (2006); *Morriss v. Barton,* 200 Okla. 4, 12, 190 P.2d 451 (1947); *Ashcraft v.*

*Saunders,* 251 Or. 139, 142-144, 444 P.2d 924 (1968); *Aldrich v. Howard,* 8 R.I. 125, 127 (1864); *Olson-Roti v. Kilcoin,* 653 N.W.2d 254, 260-262 (S.D.2002); *Hayes v. Gill,* 216 Tenn. 39, 48-49, 390 S.W.2d 213 (1965); *In re Estate of Garza,* 725 P.2d 1328, 1330 (Utah 1986); *Dalton v. Johnson,* 204 Va. 102, 107, 129 S.E.2d 647 (1963); *McWilliams v. Bragg,* 3 Wis. 424, 431 (1854); *Parker v. Artery,* 889 P.2d 520, 525 (Wyo.1995); *State Farm Mut. Auto. Ins. Co. v. Maidment,* 107 N.M. 568, 761 P.2d 446 (1988).

**{¶ 42}** Punitive damages are not part of, and are solely incident to, the underlying cause of action. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 650, 635 N.E.2d 331 (1994). They may be considered only after compensable harm from the cause of action is established. *Id.* I do not believe that punitive damages are an inherent part of a tort action: they are an award separate from compensation for injury and are separately tried with separate burdens of proof. R.C. 2315.21(D)(4) (clear and convincing evidence). The primary goal is to punish the defendant and deter the defendant from further misconduct.

**{¶ 43}** General deterrence is accomplished by imposing punishment on the tortfeasor. "The rationale for allowing punitive damages has been recognized in Ohio as that of punishing the offending party and *setting him up as an example* to others that they might be deterred from similar conduct." (Emphasis added.) *Detling v. Chockley*, 70 Ohio St.2d 134, 136, 436 N.E.2d 208 (1982), *overruled on other grounds, Cabe v. Lunich*, 70 Ohio St.3d 598, 640 N.E.2d 159 (1994). When punishment cannot be imposed on the deceased tortfeasor, no example is made.

**{¶ 44}** The only persons left to be used as an "example" are the tortfeasor's innocent descendants, and equity generally demands that the innocent not be punished for the wrongdoings of another. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (retribution should be visited upon the shoulders of the wrongdoer himself, not on blameless third parties, for the wrongdoer's unlawful conduct); *W. Union Tel. Co. v. Smith*, 64 Ohio St. 106, 117,

59 N.E. 890 (1901) (in cases in which "the punishment may not fall upon the actual wrongdoer * * * great care should be taken that such damages are not imposed unless all the conditions for their recovery are present").

{¶ 45} For the foregoing reasons, I would follow the view of the majority of states, and I would reverse the decision of the court of appeals.

KENNEDY, J., concurs in the foregoing opinion.

_____

Rinehart, Rishel & Cuckler, Ltd., and Grant A. Wolfe, for appellee.

Stebelton, Aranda & Snider, L.P.A., and Charles M. Elsea, for appellant.

Landskroner Grieco Merriman, L.L.C., and Drew Lagando, urging affirmance for amicus curiae Landskroner Foundation for Children.

The Dicello Law Firm and Robert F. DiCello; and Rourke & Blumenthal and Jonathan R. Stoudt, urging affirmance for amicus curiae Ohio Association for Justice.

_____