**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

KENNETH FLOYD; ERNEST L.
WALKER; HAROLD TURMAN;
LEROY MARTINEZ; DONALD G.
EMIG; JAMES MONTOYA; JOHN
POTTER; EUGENE VELARDE;
RICHARD VELARDE; JOHNNY H.
CLAY,

      Plaintiffs,

    and

MICHAEL R. INGRAM,

      Appellant,

v.

JOE ORTIZ, Executive Director of
the Department of Corrections; *
DEPARTMENT OF CORRECTIONS
OF THE STATE OF COLORADO,

      Defendants - Appellees.

No. 01-1295

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 81-K-1754)**

---

\*     Pursuant to Fed. R. App. P. 43(c)(2), Joe Ortiz is substituted for James G. Ricketts, former Executive Director, Colorado Department of Corrections, as a defendant in this action.

Submitted on the briefs: **

Michael R. Ingram, pro se.

Ken Salazar, Attorney General, Juliana M. Zolynas, Assistant Attorney General, Corrections Unit, Litigation Section, Denver, Colorado, for Defendants-Appellees.

Before **KELLY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

**LUCERO** , Circuit Judge.

Plaintiff-Appellant Michael R. Ingram seeks review of the district court's order striking his "Petition for Judgment for Specific Acts and Issuance of Contempt Citations Against Defendants" and the subsequent denial of his follow-up motions, which the court treated collectively as a request for reconsideration. Because the district court's decision was predicated on an erroneous view of the law, we reverse.

**I**

The underlying complaint in No. 81-K-1754 was filed pursuant to 42 U.S.C. § 1983 in October of 1981. The ten named plaintiffs were inmates of

---

** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.

various institutions of the Department of Corrections ("DOC") of the State of Colorado. Inmate Ingram was not one of the named plaintiffs. The defendants were the DOC and its executive director. Plaintiffs claimed they were being deprived of their property in violation of the Fifth and Fourteenth Amendments because defendants were retaining inmate funds in non-interest bearing accounts. Plaintiffs also alleged that income from the operation of the inmate canteen program was being deposited in the state treasury and not properly accounted for. Plaintiffs sought a permanent injunction directing defendants to place inmate funds into income-producing accounts, with the income to be used for the benefit of the named plaintiffs and other inmates similarly situated, and ordering defendants to promulgate rules, regulations, and procedures governing the use of canteen funds. Plaintiffs also sought an accounting for past-due interest on individual inmate accounts. Neither side wished to pursue the matter as a class action, although plaintiffs believed it would qualify as one.

Following negotiations and a hearing, the parties entered into a Stipulation and Agreement ("Agreement") in February of 1982. At the hearing, there was general assent as to most terms, as well as consensus that the Agreement would benefit, and be enforceable by, all DOC inmates, not just the named plaintiffs. The enforcement provisions required an inmate to first pursue a grievance procedure as set forth in the Agreement.

One of the key negotiated items was the relinquishment of plaintiffs' claims for interest earned on individual accounts. However, because not all plaintiffs had agreed to abandon the interest claims, the court labeled the Agreement a "confession of judgment" by the defendants. It has, however, all the attributes of a consent decree. [1] Finally, the court stated that the case could be reopened, noting that judgment had been entered for administrative purposes, thus closing the case. According to the docket sheet, the Agreement was "incorporated as an order of the court." No separate Federal Rule of Civil Procedure 58 judgment was entered, nor was the action formally dismissed in accordance with the Agreement.

In November of 1983, a second hearing was held to consider an Amended Stipulation and Agreement. The court reopened the matter and entered the amended Agreement, apparently basing its authority to do so on its continuing jurisdiction over the case. The main difference between the first and second versions of the Agreement was the clarification in the second that inmates would have separate, individualized accounts within the umbrella inmate trust account.

---

[1] For purposes of determining the effect of the Agreement, there does not appear to be any critical distinction between a consent decree and a confession of judgment. See, e.g., Langton v. Hogan, 71 F.3d 930, 935 (1st Cir. 1995) (judgment entered with prejudice under terms of settlement "whether by stipulated dismissal, a consent judgment, or a confession of judgment" not subject to collateral attack by party or person in privity).

The amended Agreement was signed and incorporated as an order of the court in March of 1984.

## II

In May of 2001, Ingram filed his petition seeking to enforce the terms of the Agreement and for issuance of contempt citations to the then executive director of the DOC. He listed numerous alleged violations of the Agreement and set forth his efforts to address these issues with the executive director, his attempts to use the prison grievance system, and his efforts to contact plaintiffs' local counsel. He did not serve the petition on defendants, nor did he attach any of the documents showing his attempts to comply with the Agreement's grievance mechanism.

The district court struck the petition based on Ingram's failure to serve defendants as required by Federal Rule of Civil Procedure 4, confer with opposing counsel as required by District Court of Colorado Local Civil Rule 7.1, attach a copy of the Agreement, or state whether the Agreement was a judgment of the court. The court further noted that Ingram was not a class representative, nor had he indicated any attempt to contact class representatives or their former counsel. The court also expressed doubt as to its jurisdiction over the matter.

Ingram then filed motions seeking an extension of time in which to appeal and "addressing issues the court deemed deficient." In the latter, he attached

documents purporting to show his attempts at nonjudicial resolution of his grievances. He argued that Federal Rule of Civil Procedure 4 service was not required because his petition was not an independent action and further expressed his assumption that the action was an ex parte proceeding. He served these documents on counsel for defendants; apparently he also sent defendants' counsel a copy of the petition. The district court treated the motions collectively as a request for reconsideration, which it denied, stating that there was no jurisdictional basis for either the petition or the request for reconsideration. [2]

## III

A trial court retains jurisdiction to enforce consent decrees. [3] Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 286 (D.C. Cir. 1993); Hook v. Arizona, 972 F.2d 1012, 1014 (9th Cir. 1992); Picon v. Morris, 933 F.2d 660, 662 (8th Cir. 1991). As a corollary, intended third-party beneficiaries of consent

---

[2] The motions for reconsideration were filed beyond the ten-day period required to toll the running of the appeal period. See Fed. R. Civ. P. 4(a)(4)(A). Consequently, the appeal is timely only as to the denial of those motions, not to the order striking the petition. See Servants of the Paraclete v. Does I-XVI, 204 F.3d 1005, 1009 (10th Cir. 2000).

[3] In addition, a district court can retain jurisdiction over a settlement agreement "if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement." Morris v. City of Hobart, 39 F.3d 1105, 1110 (10th Cir. 1994) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381 (1994)). Here, although the underlying case was terminated by an administrative closure rather than an order of dismissal, the Agreement provided that its terms "may be specifically enforced, and the court shall retain jurisdiction for such purpose." (Amended Stipulation and Agreement, Art. XI, sec. G.)

decrees have standing to enforce those decrees. Beckett, 995 F.2d at 286; Hook, 972 F.2d at 1014; Berger v. Heckler, 771 F.2d 1556, 1565–66 (2d Cir. 1985). But see Aiken v. City of Memphis, 37 F.3d 1155, 1168 (6th Cir. 1994) (relying on Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975), to hold that even intended third-party beneficiaries of a consent decree lack standing to enforce its terms). Although Ingram should have cited Federal Rule of Civil Procedure 71 rather than 70 as the basis for invoking the district court's continuing jurisdiction, he is entitled, as a present inmate for whose benefit the Agreement was entered, to seek enforcement of its terms. See Berger, 771 F.2d at 1565–66; Lasky v. Quinlan, 558 F.2d 1133, 1137 (2d Cir. 1977) (noting Rule 71 intended to provide for process to enforce court orders by persons properly affected by them, "even if they are not parties to the action"). Moreover, enforcement of the Agreement would seem to be Ingram's only remedy; he cannot file his own § 1983 action seeking to enforce it. See Klein v. Zavaras, 80 F.3d 432, 435 (10th Cir. 1996) (holding that a § 1983 action is not an appropriate means to enforce a consent decree); Figures v. Bd. of Pub. Util., 967 F.2d 357, 361 (10th Cir. 1992) (concluding that permitting individual suit under Title VII to enforce a consent decree would interfere with the court's continuing jurisdiction over the matter).

## IV

We review the district court's denial of Ingram's request for reconsideration for abuse of discretion. See Servants of the Paraclete v. Does I-XVI, 204 F.3d 1005, 1009 (10th Cir. 2000). "We will reverse the district court's determination only if we find a complete absence of a reasonable basis and are certain that the district court's decision is wrong." Plotner v. AT&T Corp., 224 F.3d 1161, 1174 (10th Cir. 2000) (further quotations omitted).

Here, the state has conceded that the district court's statement it lacked jurisdiction was incorrect (Appellee's Br. at 8), but argues that the court's dismissal order can be upheld because plaintiff failed to comply with the service requirements of Federal Rule of Civil Procedure 4 and/or Local Rule 7.1(A). However, because the petition (which was functionally a Rule 71 motion to enforce the Agreement) was not intended to be a separate complaint, Federal Rule of Civil Procedure 4 does not apply. Nor does plaintiff's failure to comply with a local rule support the denial of reconsideration for lack of jurisdiction.

"A district court by definition abuses its discretion when it makes an error of law," United States v. Benally, 215 F.3d 1068, 1073 (10th Cir. 2000) (further quotations omitted), or when it "fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based," Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997). The district court's

decision in this case lacks a reasonable basis, and we are persuaded it is wrong.

Plotner , 224 F.3d at 1174. We hold that the district court abused its discretion in denying plaintiff's request for rehearing because of its erroneous conclusion that jurisdiction was lacking. Accordingly, we **REVERSE** the district court and **REMAND** the matter for further proceedings.