**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DOÑA ANA MUTUAL DOMESTIC
WATER CONSUMERS
ASSOCIATION,

      Plaintiff,

v.

THE CITY OF LAS CRUCES, NEW
MEXICO,

      Defendant-Appellant,

MOONGATE WATER COMPANY,
INC.,

        Intervenor-Appellee.

No. 06-2266

DOÑA ANA MUTUAL DOMESTIC
WATER CONSUMERS
ASSOCIATION,

      Plaintiff-Appellant,

v.

THE CITY OF LAS CRUCES, NEW
MEXICO,

      Defendant-Appellee,

MOONGATE WATER COMPANY,
INC.,

        Intervenor-Appellee.

No. 06-2347

Lee E. Peters, Hubert & Hernandez, P.A., Las Cruces, New Mexico, for Plaintiff-Appellant, Doña Ana Mutual Domestic Water Consumers Association, in Case No. 06-2347.

Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, (Harry S. "Pete" Connelly, Office of the City Attorney, Las Cruces, New Mexico, with him on the briefs), for Defendant, City of Las Cruces, New Mexico, Appellant in Case No. 06-2266; Appellee in Case No. 06-2347.

William H. Lazar, Tesuque, New Mexico (Kyle W. Gesswein, Las Cruces, New Mexico, and William A. Walker, Jr., Las Cruces, New Mexico, with him on the brief) for Intervenor-Appellee, Moongate Water Company, Inc.

Before **BRISCOE, GORSUCH,** and **HOLMES,** Circuit Judges**.**

**BRISCOE,** Circuit Judge**.**

Doña Ana Mutual Domestic Water Consumers Association ("Doña Ana")—the appellant in Case No. 06-2347—previously entered into a settlement agreement (the "Settlement") with City of Las Cruces, New Mexico (the "City")—the appellant in Case No. 06-2266 and an appellee in Case No. 06-2347. In the Settlement, the City agreed to recognize Doña Ana's exclusive rights, under 7 U.S.C. § 1926(b), to provide water to customers in an area northeast of Las Cruces, New Mexico (the "Disputed Area"). The United States District Court

2

for the District of New Mexico entered the Settlement as a stipulated judgment and retained jurisdiction over it. Subsequently, another water service provider, Moongate Water Company, Inc. ("Moongate"), which is an appellee in Case No. 06-2266 and in Case No. 06-2347, contested Doña Ana's rights to provide water in the Disputed Area. In Moongate Water Co. v. Doña Ana Mutual Domestic Water Consumers Association, 420 F.3d 1082 (10th Cir. 2005), we determined that Doña Ana did not have § 1926(b) exclusivity as against Moongate, and in Doña Ana Mutual Domestic Water Consumers Association v. New Mexico Public Regulation Commission, 139 P.3d 166 (N.M. 2006), the New Mexico Supreme Court affirmed a state regulatory determination that, as against Doña Ana, Moongate had the exclusive right to serve the Disputed Area. Doña Ana and the City then attempted to amend their previous Settlement via a "Second Addendum," in which Doña Ana consented to the City providing water in the Disputed Area. Moongate intervened and moved for summary judgment, claiming that it was a third-party beneficiary to the original Settlement and that the Second Addendum prejudiced its rights to exclusivity in the Disputed Area. The district court agreed with Moongate and refused to approve the Second Addendum. Doña Ana and the City appeal, arguing that the district court erred in holding that Moongate was a third-party beneficiary. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and, in Case No. 06-2266, we reverse and remand. We dismiss the related appeal, Case No. 06-2347, as moot.

3

I.

Moongate is a public utility organized under the New Mexico Public Utilities Act, N.M. Stat. Ann. § 62-1-1 et seq. As a public utility, Moongate falls under the jurisdiction of the New Mexico Public Regulatory Commission ("PRC"). See N.M. Stat. Ann. § 62-6-4. The PRC comprehensively regulates many aspects of a public utility's business, including rate-setting, service standards, accounting methods, and the building or expansion of facilities. See N.M. Stat. Ann. §§ 62-6-4, -16, -19, -23; id. § 62-9-1. In return for this regulation, New Mexico law grants a public utility a limited monopoly within its service area. See N.M. Stat. Ann. §§ 62-9-1, -1.1; see also Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n, 904 P.2d 28, 39 (N.M. 1995).

Doña Ana is a nonprofit water service provider formed under the New Mexico Sanitary Projects Act, N.M. Stat. Ann. § 3-29-1 et seq. As a mutual domestic water consumers association, Doña Ana is not subject to regulation by the PRC, except with regard to disputes between Doña Ana and a public utility, such as Moongate. See N.M. Stat. Ann. § 62-9-1; see also El Vadito de los Cerrillos Water Ass'n v. N.M. Pub. Serv. Comm'n, 858 P.2d 1263, 1267 (N.M. 1993).

The City is a municipality providing water service pursuant to N.M. Stat. Ann. § 3-27-1 et seq. As a municipality, the City is not subject to regulation by

4

the PRC.  See N.M. Stat. Ann. § 62-6-4.[1]

In addition to the New Mexico regulatory scheme, federal law sometimes limits a provider's ability to provide water to a particular area.  Pursuant to 7 U.S.C. § 1926(a)(1), nonprofit water associations may borrow federal funds for "the conservation, development, use, and control of water, and the installation or improvement of drainage or waste disposal facilities, recreational developments, and essential community facilities including necessary related equipment, all primarily serving farmers, ranchers, farm tenants, farm laborers, rural businesses, and other rural residents . . . ."  Section 1926(b) prohibits other water utilities from competing with the borrowing entity within the borrowing entity's service area.  7 U.S.C. § 1926(b).[2]  Doña Ana has borrowed money from the federal government under this program.

---

[1] Municipalities may elect to participate in the Public Utility Act's general regulatory scheme under the jurisdiction of the PRC, see N.M. Stat. Ann. § 62-6-5, but the City has not elected to do so.

[2] This provision states:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

In August 2002, Doña Ana filed suit against the City in the United States District Court for the District of New Mexico, alleging that the City had violated Doña Ana's rights under 7 U.S.C. § 1926(b) by commencing water service to customers in Doña Ana's service area. Moongate was not a party to this action. In March 2003, Doña Ana and the City entered into the Settlement, in which the City agreed to recognize Doña Ana's right to § 1926(b) protection in the Disputed Area.

The controversy in the instant appeal centers around the language in several paragraphs of the Settlement. First, in the preamble to the Settlement, the parties (Doña Ana and the City) stated:

> WHEREAS, it is the intention of the parties hereto to settle and dispose of, fully and completely, any and all claims, demands, and causes of action heretofore or hereafter held by one party against the other, arising out of, connected with or incidental to the dealings between the parties prior to the date hereof regarding the Association's service area.

Settlement, ROA, Vol. I, at 51.[3]  Next, the Settlement provided:

> 1.  The parties recognize that this is a dispute concerning the service areas to which Dona Ana is entitled to 7 U.S.C. § 1926(b) protection, but as a compromise to settle litigation, and only binding on the City and the Association, and specifically not binding on Moongate Water Company, ("Moongate"), it is agreed the Association is entitled to 7 U.S.C. § 1926(b) protection within the geographical boundaries designated in the document attached hereto as Exhibit "A" (hereinafter the "Association's Service Area"). The City shall not provide water service to any customer within the Association's

---

[3] The Settlement refers to Doña Ana as the "Association" in certain places, and as "Dona Ana" in others.

6

Service Area either directly or through the grant of a franchise or similar means, without the express written consent of the Association. Notwithstanding this provision, the City intends to renegotiate a new franchise with Moongate, and the effect of such renewal or extension shall be resolved pursuant to Paragraph Number 3 herein. The Association shall not submit this Agreement in litigation between the Association and Moongate for the purpose of arguing that the City's recognition of Dona Ana's § 1926(b) protected service area is binding on Moongate.

Settlement, ¶ 1, ROA, Vol. I, at 51-52. Paragraph 3, which the parties referenced in Paragraph 1, then stated:

3. There is a disagreement between the parties as to whether Moongate Water Company may have a right to sell water within certain portions of the Association's Service Area. The City is currently negotiating with Moongate for a non-exclusive franchise to sell water in a certain area, a portion of which is located within the Association's Service Area. Moongate's present franchise with the City expired on December 31, 2002. The City has previously advised Moongate that Moongate will have a month-to-month franchise upon expiration of the existing franchise on December 31, 2002 pending renegotiation of a new franchise. It is the Association's position that the City's granting of and/or renewal of a franchise with Moongate for it to provide water service within the Association's Service Area may violate the Association's claimed rights pursuant to 7 U.S.C. § 1926(b). This dispute relating to whether the franchise or renewed franchise granted by the City to Moongate is void as a violation of 7 U.S.C. § 1926(b), and/or whether Moongate has the right to sell water within any portion of the Association's Service Area with or without a franchise from the City, is to be resolved between the Association and Moongate, and the determination of such issues by a court of competent jurisdiction or by settlement between Moongate and the Association shall be binding upon the City.

Settlement, ¶ 3, ROA, Vol. I, at 52-53. The Settlement also contained a broad release of claims between the City and Doña Ana, as well as several additional provisions not directly relevant to the instant appeal.

7

The district court entered a stipulated judgment, incorporating the terms of the settlement and providing:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court retains jurisdiction to resolve any dispute between the parties pertaining to the Agreement of Compromise, Settlement and Release if such disputes cannot be resolved by mediation as provided for in said Agreement.

Judgment, ROA, Vol. I, at 67.

In the meantime, in December 2002, Moongate initiated an action against Doña Ana in the United States District Court for the District of New Mexico, seeking a declaratory judgment that Doña Ana did not have § 1926(b) protection in the Disputed Area. See Moongate, 420 F.3d at 1085. The district court agreed with Moongate. See id. at 1086. In 2005, we affirmed the decision of the district court and held that Doña Ana did not have § 1926(b) protection in the Disputed Area. See id. at 1087-90.

In addition, in June 2003, after the City and Doña Ana had entered into the Settlement, Moongate filed a complaint against Doña Ana with the PRC. Moongate sought a declaration that the Disputed Area was part of Moongate's service area and that Doña Ana could not extend service into the Disputed Area. In May 2005, the PRC issued a final order in favor of Moongate, prohibiting Doña Ana from extending service into the Disputed Area. In June 2006, the New Mexico Supreme Court affirmed the PRC's decision. See Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n, 139 P.3d

8

166 (N.M. 2006).

Two other state proceedings relate tangentially to the instant case. The first is an action that Moongate brought against the City in New Mexico state court in 2004, alleging that the City had intruded on Moongate's service area. In June 2006, the court held that "[a]s a consequence of electing not to be regulated by the [PRC], the City must compensate Moongate for damage to or taking of Moongate's property by intruding on its service area." Findings of Fact & Conclusions of Law, 06-2266 Appellee Br. at A-18, ¶ 53. Second, in January 2005, Moongate brought an action against the City in New Mexico state court, seeking a declaratory judgment that Moongate was a third-party beneficiary to the Settlement between Doña Ana and the City. In November 2005, the court granted summary judgment in favor of Moongate, holding that Moongate was a third-party beneficiary to the Settlement and that the City could not provide service in the Disputed Area. The City has appealed the ruling to the New Mexico Court of Appeals, but Moongate and the City have stipulated to a stay in that appeal, pending resolution of the instant case.[4]

The instant appeal arose from a dispute between the City and Doña Ana regarding the City's compliance with the terms of the Settlement. In March 2005, Doña Ana filed a motion to enforce the Settlement. Following mediation, Doña

---

[4] All of the parties have agreed that the case in state court does not have collateral estoppel effect in the instant case because Doña Ana was not a party to the case in state court.

Ana and the City agreed to amend the Settlement via a Second Addendum. Under the Second Addendum, Doña Ana consented to the City supplying water to customers within certain parts of the Disputed Area. In return, the City agreed to provide certain wastewater services to portions of Doña Ana's territory.

On November 22, 2005, the City and Doña Ana filed a motion in the district court to amend the Settlement via the Second Addendum. That same day, Moongate filed a motion to intervene, claiming that it was a third-party beneficiary to the Settlement and that the Second Addendum violated its rights.[5] After initially opposing Moongate's motion to intervene, the City and Doña Ana stipulated to Moongate's intervention but reserved the right to challenge Moongate's substantive contentions. After filing its complaint in intervention, Moongate moved for summary judgment, arguing that it was a third-party beneficiary to the Settlement and that the Second Addendum adversely affected its rights. Moongate based its argument on the language of the Settlement, as well as extrinsic evidence, and Moongate contended that its third-party beneficiary status precluded the City from supplying water to customers in the Disputed Area.

---

[5] Moongate also sought and, on January 17, 2006, obtained an order from the PRC requiring Doña Ana to withdraw its authorization to the City to provide service in areas where the PRC had prohibited Doña Ana from serving. The New Mexico Supreme Court, however, recently reversed the PRC's order and held that the PRC exceeded the scope of its authority. See Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n, No. 29,654 (N.M. May 8, 2007).

The district court granted Moongate's motion for summary judgment, holding that Moongate was a third-party beneficiary and denying approval of the Second Addendum.  The district court explained:

> In the Settlement Agreement, City acknowledged that Doña Ana claimed § 1926(b) protection as to Doña Ana's claimed service area, that the dispute between Doña Ana and Moongate would be resolved between Doña Ana and Moongate, and that City would be bound by the resolution of the dispute.  City promised that it would be bound by the outcome of the dispute between Doña Ana and Moongate, regardless of which of the two entities prevailed in the dispute. Clearly, Doña Ana and City intended, as of the execution of the Settlement Agreement, that Moongate would never have to litigate, *vis a vis* the City, any issue regarding water service in the claimed service area, if Moongate prevailed in its dispute with Doña Ana. While it may be obvious that both City and Doña Ana believed that Doña Ana would prevail in its dispute with Moongate, the parties may not now disavow their intention to benefit Moongate.  While the conferring of the benefit on Moongate may have been unexpected, it cannot be said to have been unintended.  Moongate is a third-party beneficiary to the Settlement Agreement.

Dist. Ct. Op., ROA, Vol. II, at 649.  Both Doña Ana and the City have appealed this ruling, arguing that Moongate is not a third-party beneficiary based on either the language of the Settlement or extrinsic evidence.[6]

## II.

As a preliminary matter, the district court properly exercised jurisdiction in

---

[6] There is an additional dispute between the City and Doña Ana in Case No. 06-2347, regarding the district court's refusal to approve the portions of the Second Addendum not affecting Moongate, and the district court's refusal to allow Doña Ana to re-file its motion to enforce the Settlement.  Because our decision on the third-party beneficiary issue makes these other issues moot, we do not address them.

11

this case. Because the original action between Doña Ana and the City arose under 7 U.S.C. § 1926(b), the district court had jurisdiction over that action pursuant to 28 U.S.C. § 1331. The district court retained jurisdiction over the Settlement because the stipulated judgment provided that the district court "retains jurisdiction to resolve any dispute between the parties pertaining to the Agreement of Compromise, Settlement and Release if such disputes cannot be resolved by mediation as provided for in said Agreement," Judgment, ROA, Vol. I, at 67. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381 (1994); Floyd v. Ortiz, 300 F.3d 1223, 1226 & n.3 (10th Cir. 2002).

We have jurisdiction under 28 U.S.C. § 1291 to review the district court's grant of summary judgment to Moongate. "We review a grant of summary judgment de novo, applying the same legal standard used by the district court." Gillmor v. Thomas, 490 F.3d 791, 798 (10th Cir. 2007). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] "In ruling on summary judgment, the court must resolve all ambiguities

---

[7] As of December 1, 2007, Rule 56(c) now reads: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." This change is

(continued...)

12

and draw all factual inferences in favor of the non-moving party." Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d 1281, 1287 (10th Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). We review the district court's determination of state law de novo. Roberts v. Printup, 422 F.3d 1211, 1215 (10th Cir. 2005).

The district court erred in holding that Moongate was a third-party beneficiary to the Settlement. "'Ordinarily, the obligations arising out of a contract are due only to those with whom it was made; a contract cannot be enforced by a person who is not a party to it or in privity with it.'" Tarin's, Inc. v. Tinley, 3 P.3d 680, 685 (N.M. Ct. App. 1999) (quoting Am. Jur. 2d Contracts § 425 (1991)) (alteration omitted). Sometimes, however, "[a] third party may be a beneficiary of [a] contract, and as a beneficiary may have an enforceable right against a party to [the] contract." Fleet Mortgage Corp. v. Schuster, 811 P.2d 81, 82 (N.M. 1991) (citing Permian Basin Inv. Corp. v. Lloyd, 312 P.2d 533, 537 (N.M. 1957)). "Although the thought has been expressed in differing ways, a prime requisite to this status is that the parties to the contract must have intended to benefit the third party, who must be something more than a mere incidental beneficiary." McKinney v. Davis, 503 P.2d 332, 333 (N.M. 1972); see also Schuster, 811 P.2d at 82-83 ("Whether a party is a third-party beneficiary depends

---

[7](...continued)
entirely stylistic and does not affect the result in the instant case.

13

on if the parties to the contract intended to benefit the third party." (citing McKinney, 503 P.2d at 333)); Tinley, 3 P.3d at 685-86 ("There are two classes of third-party beneficiaries: intended beneficiaries and incidental beneficiaries. Only intended beneficiaries can seek enforcement of a contract." (citations omitted)). "The promisor must have 'had reason to know the benefit was contemplated by the promisee as one of the motivating causes for entering the contract.'" Tinley, 3 P.3d at 686 (quoting Stotlar v. Hester, 582 P.2d 403, 407 (N.M. Ct. App. 1978)); see also Lloyd, 312 P.2d at 537.

Moreover, "[t]he burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him. He may do so using extrinsic evidence if the contract does not unambiguously indicate an intent to benefit him." Tinley, 3 P.3d at 686 (citations omitted); see also Schuster, 811 P.2d at 83 ("'Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary.'" (quoting Valdez v. Cillessen & Son, Inc., 734 P.2d 1258, 1264 (N.M. 1987))); Casias v. Cont'l Cas. Co., 960 P.2d 839, 842 (N.M. Ct. App. 1998) ("The intent of the parties to a contract may be proven by 'relying on the unambiguous language of the agreement itself, or, in the absence of such language, on extrinsic evidence such as the circumstances surrounding the execution of the agreement.'" (quoting Hansen v. Ford Motor Co., 900 P.2d 952, 954 (N.M. 1995))). As always, "'[t]he primary objective in construing a contract

14

is to ascertain the intention of the parties.'" Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 858 P.2d 66, 80 (N.M. 1993) (quoting Mobile Investors v. Spratte, 605 P.2d 1151, 1152 (N.M. 1980)). In addition, "a contract should be interpreted as a harmonious whole to effectuate the intentions of the parties, and every word, phrase or part of a contract should be given meaning and significance according to its importance in context of the contract." Brown v. Am. Bank of Commerce, 441 P.2d 751, 755 (N.M. 1968). "Further, in construing the contract, reasonable rather than unreasonable interpretations are favored by the law." Id.

The language of the Settlement "does not unambiguously indicate an intent to benefit [Moongate]." Tinley, 3 P.3d at 686. First, in the preamble to the Settlement, Doña Ana and the City explained that the overriding "intention of the parties" was "to settle and dispose of, fully and completely, any and all claims, demands, and causes of action heretofore or hereafter held by one party against the other, arising out of, connected with or incidental to the dealings between the parties . . . ." Settlement, ROA, Vol. I, at 51 (emphasis added). Contrary to Moongate's contention, nothing in this provision indicates that the parties intended the Settlement to resolve all claims between the City and Moongate.[8]

Paragraphs 1 and 3 similarly contain no indication that the parties intended to make Moongate a third-party beneficiary to the Settlement. In Paragraph 1, the

[8] In claiming that this paragraph supports its claims, Moongate actually omits, through the use of ellipses, the language "held by one party against the other." As the City points out, such an omission is disingenuous.

15

parties agreed to the following: "The City shall not provide water service to any customer within the Association's Service Area either directly or through the grant of a franchise or similar means, without the express written consent of the Association." Settlement, ¶ 1, ROA, Vol. I, at 51. Moongate argues that, under this provision, the City "agreed that its right to provide water service in the disputed area, if any, was derivative of Doña Ana's right and dependent upon Doña Ana's permission." 06-2266 Appellee Br. at 12. The language does not support such a broad interpretation. Rather, the provision simply states that the City will not provide water service in the Disputed Area without Doña Ana's consent.

Doña Ana and the City next agreed:

Notwithstanding this provision, the City intends to renegotiate a new franchise with Moongate, and the effect of such renewal or extension shall be resolved pursuant to Paragraph Number 3 herein. The Association shall not submit this Agreement in litigation between the Association and Moongate for the purpose of arguing that the City's recognition of Dona Ana's § 1926(b) protected service area is binding on Moongate.

Settlement, ¶ 1, ROA, Vol. I, at 52. By this language, both parties acknowledged that, even though the City agreed not to provide water service in the Disputed Area without Doña Ana's consent, the City was nonetheless renegotiating a franchise with Moongate, and Doña Ana and Moongate were litigating whether Doña Ana had § 1926(b) protection against Moongate in the Disputed Area. The last sentence, under which Doña Ana agreed not to submit the Settlement as

16

evidence in its litigation against Moongate, reflected the City's desire to avoid any forced participation in the litigation between Doña Ana and Moongate over Doña Ana's alleged § 1926(b) protection. See Settlement Draft, ROA, Vol. II, at 440 (showing the addition of a draft of the provision); Letter with Suggested Settlement Changes, ROA, Vol. II, at 445-46 (changing the language to its final version, so that the Settlement would not provide Moongate with an advantage over Doña Ana, or vice versa, in the litigation between those two parties); Affidavit of Jorge Garcia, ¶ 6, ROA, Vol. II, at 591 ("The City wished to end the litigation between itself and the Association and did not wish to participate in further litigation with the Association on the issue of the City's right to grant a successor non-exclusive franchise to Moongate Water Company.").[9]

Likewise, Paragraph 3 does not show an intent to benefit Moongate. It begins by acknowledging that "[t]here is a disagreement between the parties as to whether Moongate Water Company may have a right to sell water within certain portions of the Association's Service Area." Settlement, ¶ 3, ROA, Vol. I, at 52. It next notes that "the City is currently negotiating with Moongate for a non-exclusive franchise to sell water in [the Disputed Area]," and that, in the meantime, "Moongate will have a month-to-month franchise." See id. Paragraph

_____

[9] As Doña Ana noted during the drafting of the Settlement, this provision was almost certainly unnecessary, because the Settlement would not have been admissible to show that the City's § 1926(b) recognition was somehow binding on Moongate. The City's over-caution, though, does not indicate an intent to benefit Moongate.

17

3 then addresses the dispute between Doña Ana and Moongate:

> It is the Association's position that the City's granting of and/or renewal of a franchise with Moongate for it to provide water service within the Association's Service Area may violate the Association's claimed rights pursuant to 7 U.S.C. § 1926(b). This dispute relating to whether the franchise or renewed franchise granted by the City to Moongate is void as a violation of 7 U.S.C. § 1926(b), and/or whether Moongate has the right to sell water within any portion of the Association's Service Area with or without a franchise from the City, is to be resolved between the Association and Moongate, and the determination of such issues by a court of competent jurisdiction or by settlement between Moongate and the Association shall be binding upon the City.

Id. at 52-53.

Paragraph 3's last sentence is the heart and soul of Moongate's third-party beneficiary claim, but it does not extend nearly as far as Moongate contends. Its use of the words, "[t]his dispute," in particular, shows that it was addressing the dispute described in the preceding sentence, regarding whether Doña Ana's alleged § 1926(b) rights precluded Moongate from serving water in the Disputed Area. The determination that Doña Ana and the City agreed "shall be binding upon the City" was Doña Ana's rights against Moongate under § 1926(b). By this provision, the City agreed that, if Doña Ana prevailed over Moongate, then the City would be bound in recognizing Doña Ana's § 1926(b) rights over Moongate and could not grant Moongate a franchise. Conversely, if Moongate prevailed over Doña Ana, the City would be free to grant Moongate a franchise. Nothing in this provision indicates that, if Moongate established rights over Doña Ana to

18

serve the Disputed Area, then that determination would automatically preclude the City from serving the Disputed Area too. Moongate has broadened the scope of "[t]his dispute" to include all disputes between Moongate, Doña Ana, and the City, regarding which party or parties may serve the Disputed Area. The language of Paragraph 3 does not support such an all-encompassing intent.

In its argument on appeal, Moongate implicitly ignores the words, "[t]his dispute," in Paragraph 3, and instead focuses on the subsequent modifying clause, "relating to . . . whether Moongate has the right to sell water within any portion of the Association's Service Area with or without a franchise from the City." Under a straightforward reading of the Settlement, however, "[t]his dispute" refers to the preceding sentence, i.e. "the Association's position that the City's granting of and/or renewal of a franchise with Moongate for it to provide water service within the Association's Service Area may violate the Association's claimed rights pursuant to 7 U.S.C. § 1926(b)." The clause that Moongate cites is just an attempt—albeit a poorly drafted one—to provide additional specificity regarding the issues that Doña Ana and Moongate were litigating as part of Doña Ana's § 1926(b) claim to the Disputed Area.

As Doña Ana observes, no state or federal proceeding could have established Moongate's rights over the City to serve the Disputed Area. Neither Moongate nor the City claimed § 1926(b) protection, so federal law could not have provided either party with exclusive rights to the Disputed Area. The PRC

19

did not have jurisdiction over the City, <u>see</u> N.M. Stat. Ann. § 62-6-4, so Moongate could not have asked the PRC to preclude the City from serving the Disputed Area.  Moongate, therefore, is arguing that its competitors—Doña Ana and the City—intended to grant it rights as a third-party beneficiary that it could not have obtained through any process under state or federal law.  This is not convincing.

Additionally, the litigation time-line between the parties supports a narrow reading of "[t]his dispute" in Paragraph 3.  At the time of the Settlement in March 2003, the parties were not yet litigating any other disputes beyond Doña Ana's alleged § 1926(b) protection.  Moongate did not file a complaint against Doña Ana with the PRC until June 2003, and Moongate did not bring any action against the City in New Mexico state court until 2004.  Moongate's argument that the Settlement provision "covered all questions of Moongate's right to sell water in the disputed area, including Moongate's state law claims against Doña Ana before the PRC," 06-2266 Appellee Br. at 15, ignores the simple fact that, at the time of the Settlement, there were no "state law claims against Doña Ana before the PRC."

Moreover, the Settlement itself provided for a specific mechanism to address the situation that ultimately developed.  The Settlement stated that "[t]he City shall not provide water service to any customer within the Association's Service Area either directly or through the grant of a franchise or similar means,

20

without the express written consent of the Association." Settlement, ¶ 1, ROA, Vol. I, at 51 (emphasis added). In this provision, the parties contemplated the situation where Doña Ana could give its "express written consent" for the City to serve the Disputed Area, regardless of Doña Ana's rights against Moongate (or vice versa). Under Moongate's construction, Moongate's rights over Doña Ana automatically preclude the City from serving the Disputed Area, and Paragraph 3 of the Settlement swallows the "express written consent" provision in Paragraph 1. Such a reading does not comport with New Mexico's standard for determining third-party beneficiary status. See Casias, 960 P.2d at 843 (explaining, in response to the plaintiffs' arguments that they were third-party beneficiaries, that "it appears that Plaintiffs are not construing the contract as a harmonious whole, but rather are narrowly focusing on the language in subsection 4(b) out of proportion with the rest of the contract").

The district court's reasoning is likewise unpersuasive. After broadening the scope of the "determination" to which the City agreed to be bound, the district court explained that, "[w]hile the conferring of the benefit on Moongate may have been unexpected, it cannot be said to have been unintended." Dist. Ct. Op., ROA, Vol. II, at 649. This is questionable reasoning, and it does not comport with the plain language of the Settlement. Neither Doña Ana nor the City intended to benefit Moongate, and certainly not in such an all-encompassing manner.

Extrinsic evidence also does not support Moongate's claim to third-party

21

beneficiary status.  Moongate relies upon several pieces of evidence.  First, Moongate cites to the "non-use clause" at the end of Paragraph 1 of the Settlement as evidence that Doña Ana and the City intended to benefit Moongate.[10]  As discussed <u>supra</u>, however, this sentence reflects the City's desire to avoid any forced participation in the litigation between Doña Ana and Moongate over Doña Ana's alleged § 1926(b) protection.  The City requested this clause for the City's benefit—not with any intent to benefit Moongate.

Second, Moongate contends that the parties intended to benefit Moongate when they added the reference to "settlement" in the last sentence of Paragraph 3.  <u>See</u> Settlement, ¶ 3, ROA, Vol. I, at 53 ("[T]he determination of such issues by a court of competent jurisdiction or by settlement between Moongate and the Association shall be binding upon the City.").  Moongate claims that the City, as the promisor, agreed to add this language for Doña Ana, the promisee, to help incentivize Moongate to settle, since Moongate would know that a settlement would bind the City as conclusively as litigation would.[11]  Moongate provides no

_____

[10] The sentence itself is not "extrinsic evidence," but the other evidence is, <u>see</u> <u>supra</u> (discussing the evidence of the sentence's intent and formation).

[11] Notably, this is the only point at which Moongate invokes the promisor-promisee paradigm that typically characterizes a third-party beneficiary claim.  <u>See</u> <u>Tinley</u>, 3 P.3d at 686.  Usually, the promisee requests that the promisor provide some benefit for the third-party beneficiary, with the promisee's self-interest as the motivation behind the request (e.g., if the third-party beneficiary is the promisee's creditor).  <u>See</u> <u>id.</u>  Here, if the City is the promisor, as Moongate implies, then Doña Ana is the promisee, and presumably, Doña Ana should have

(continued...)

22

evidence to support this interpretation, and we will not simply presume that such evidence exists.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990).

Third, Moongate cites to two statements by the City's attorneys.  The first is a statement by Harry Connelly, at the beginning of a deposition conducted during the § 1926(b) litigation between Doña Ana and Moongate:

> Three, that there's a treatment between [Doña Ana] and [the City] and about Moongate's service area.  The problem of that is to be solved by [Doña Ana] and Moongate, or a court, and such agreement or settlement is binding on the city.

Deposition of John Reid, ROA, Vol. I, at 295.  As the City points out, Mr. Connelly was attempting to recount the terms of the Settlement, as concisely as possible, on the record at the beginning of the deposition.  An ambiguous, ad-lib summary is not support for Moongate's all-encompassing view of the Settlement's intent.  As for the second statement, Moongate cites to a letter from Marcia Driggers, in which Ms. Driggers stated:

> The City understands that Judge Brack's decision in the Moongate v. Dona Ana Mutual litigation held that the disputed service area claimed by Dona Ana Mutual was not entitled to Section 1926(b) protection and therefore, the PRC was entitled to settle service area disputes in compliance with state statutes.  Unless the City is persuaded otherwise, the City believes that any forthcoming PRC decision is as binding on the City as the decision of a court of competent jurisdiction.

---

[11](...continued)
some motivation for asking the City to benefit Moongate.  Moongate never states, though, what Doña Ana's motivation is here, or why Doña Ana would ever intentionally request a benefit for Moongate—Doña Ana's competitor and adversary in litigation.

23

Letter from Marcia Driggers, ROA, Vol. I, at 297. Here, the qualifying phrase, "[u]nless the City is persuaded otherwise," shows that the City was attempting to interpret the Settlement in light of changed—and unforeseen—circumstances, and that the City's interpretation was open to revision. It provides no evidence that either the City or Doña Ana intended the Settlement to benefit Moongate.

In addition to asking us to reverse the district court's grant of summary judgment in favor of Moongate, Doña Ana and the City request that we grant summary judgment in their favor. We agree that this is the proper course of action. We have previously explained:

> The weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under rule 56. And while an appellate court should not grant summary judgment in favor of the nonmoving party where the movant has not had the opportunity to present the applicable facts, if the facts were fully developed at the summary judgment hearing so that the court of appeals can determine that the nonmoving party clearly was entitled to a judgment as a matter of law, an entry of judgment for the nonmoving party may be proper if there is no procedural prejudice to the moving party.

Dickeson v. Quarberg, 844 F.2d 1435, 1444 n.8 (10th Cir. 1988) (citations, alteration, and internal quotation marks omitted). Here, Moongate had the burden of showing that it was a third-party beneficiary to the Settlement. Tinley, 3 P.3d at 686. The language of the Settlement does not indicate any intent to confer a benefit upon Moongate. Likewise, none of Moongate's extrinsic evidence raises a genuine issue of material fact as to Doña Ana or the City intending the Settlement

24

to benefit Moongate. On the contrary, the only evidence directly addressing their intent at the time of the Settlement indicates the exact opposite. See Affidavit of Jorge Garcia, ¶ 9, ROA, Vol. II, at 591-92 ("It was not the intention of the City that Moongate be a third-party beneficiary to the 2003 Settlement Agreement."); Affidavit of Mariano Martinez, ¶ 8, ROA, Vol. II, at 613 ("At no time did the Association intend that Moongate would be a third party beneficiary to the Agreement."). Summary judgment in favor of Doña Ana and the City is appropriate.

Therefore, in Case No. 06-2266, we REVERSE the district court's grant of summary judgment in favor of Moongate, and we REMAND to the district court with an order to grant summary judgment in favor of Doña Ana and the City, and to enter the Second Addendum. In addition, and as explained supra note 6, we DISMISS Case No. 06-2347 as moot.