2011 OK CIV APP 126

**SELF & ASSOCIATES, INC.,**
**Plaintiff/Appellant,**

v.

**Justin Wade JACKSON, Individually; Jeffrey T. Stites, Individually; and the Law Office of Jef Stites, PLLC, Defendants/Appellees.**

No. 108,057.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 19, 2011.

Rehearing Denied June 9, 2011.

Certiorari Denied Oct. 10, 2011.

Robert D. Tomlinson, Jennifer C. Schnell, Tomlinson Rust McKinstry Grable, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Jef Stites, Law Office of Jef Stites, PLLC, Tulsa, Oklahoma, for Defendants/Appellees.

JERRY L. GOODMAN, Presiding Judge.

¶ 1 Plaintiff, Self & Associates, Inc. (Self), a law firm, appeals a summary judgment granted in favor of Defendants, Justin Wade Jackson (Client), and Jeffrey T. Stites and the Law Office of Jef Stites, PLLC (Stites). Self sued Client and Stites for damages allegedly caused when Client terminated his contingent fee contract with Self and entered into a contract with Stites. We issued an opinion in this matter on January 13, 2011. Stites and Client subsequently filed a Petition for Rehearing which we sustain simultaneously with the issuance of this opinion. We withdraw our earlier opinion and in lieu thereof issue this opinion. Based upon our review of the facts and applicable law, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2 On May 8, 2006, Client and Self executed a contract for Self to represent Client concerning an April 2006 car accident in which Client was seriously injured. The contract provided for a contingent fee entitling Self to one-third of any amount recovered before suit was filed and 40 percent after suit was filed.[1] The contract provided that Self would make an effort to settle before filing suit; that Self would consult Client before filing suit; and that "no compromise or settlement shall be accepted without the consent of all parties hereto."

¶ 3 Self pursued Client's legal claims for more than nine months but did not file suit. On February 16, 2007, Self received a letter from Client, dated February 12, 2007, stating his services were terminated and Client had hired Stites. In June 2007, Stites filed suit on Client's behalf and endorsed his claim for an attorney's lien on the petition. In November 2007, Stites settled the case for more than $500,000.00. Although Stites was paid from the proceeds, Self has received no compensation for the services he rendered to Client prior to his discharge.

1. The contract provided for no compensation if there was a "failure of recovery."

¶ 4 In February 2008, Self filed the present action. His initial petition alleged that he contacted Client when he received the termination letter, that Client told him Stites "had persuaded" Client to terminate Self even though Client did not desire to do so, and Self had done nothing to justify being terminated. His petition sought damages from Client for legal services based upon his "investment of time, services, and expenses." It also sought compensatory and punitive damages against Stites for tortious interference with Self's attorney-client contract.

¶ 5 Both Defendants moved to dismiss for failure to state a claim; they also moved to strike allegations that Defendants' claims were protected by attorney-client privilege. The trial court struck the allegedly privileged matter and dismissed Self's claim to the extent it asserted an attorney's lien, noting that Self admitted he had not perfected a lien under 5 O.S.2001, § 6. The court also took a number of other actions to preserve Client's asserted attorney-client privilege from waiver and to protect against disclosure of privileged information, including instructing Self to file an amended petition under seal.[2]

¶ 6 Defendants then moved for summary judgment, asserting Self could not present admissible evidence in support of his tortious interference claim against Stites because all communications between Self and Client, and Client and Stites, were protected by the attorney-client privilege, which Client asserted. Defendants also asserted Self could not assert a breach of contract claim because Client had the right to terminate him at any time, and because Self had not perfected an attorney's lien; therefore, Defendants argued Self had no basis to seek damages against Client, Stites, or the settlement proceeds.

¶ 7 In response, Self filed an opposing brief under seal. Attached to his brief were pages from Stites' deposition transcript reflecting Stites' refusal to answer numerous questions due to "attorney-client privilege," and Stites' notification to him that Client would not be produced for deposition for the same reason. Self also submitted an affidavit that, among other things, describes his own interaction with Client after Self received the termination letter. According to Self, Client stated he had contacted Stites to discuss this case and another matter, and that Stites had persuaded him to terminate Self. Self's affidavit also states that the two arranged to meet on Monday in order to go over a petition to be filed by Self, but Client called and cancelled, and later sent him a fax wherein Client re-stated that Self was terminated, that Client had hired Stites, and that Self should contact Stites to "work out compensation for your work thus far."

¶ 8 Also attached to Self's response brief was an affidavit from his expert witness, Michael Allen Walsh, an Oklahoma attorney, who opined that Self provided "very valuable services . . . that greatly increased the value of" Client's case. Walsh noted that Stites' billing records (copies of which are attached to the affidavit) and other evidence indicate that Stites conferred with Client by telephone on February 9, 2007, that Client informed Stites that he was represented by Self, and that Client faxed Stites information about the case for Stites' evaluation two days later. Walsh opined that "Mr. Stites not only communicated concerning the merits" of Client's case prior to Self's termination, but "accepted Mr. Jackson as a client verbally on February 9, 2007 . . . ."

¶ 9 The trial court granted Defendants' motion for summary judgment, stating it appeared to her that Client terminated Self's services before hiring Stites. Self now appeals.

### Standard of review

¶ 10 Summary judgment is appropriate only if the record, construed in a light most favorable to the party against whom judgment was granted, discloses uncontroverted material facts that do not support any legitimate inference in favor of that party. *First Nat'l Bank & Trust Co. of Vinita v. Kissee,* 1993 OK 96, ¶¶ 7–8, 859 P.2d 502, 505. The granting of summary judgment presents an

---

2. In addition to requiring Self to file an amended petition under seal, the court entered a protective order protecting and preserving Client's privilege as to documents produced in discovery and, at Self's request, sealed Self's responses to Defendants' motion for summary judgment.

issue of law and, therefore, requires *de novo* review, *i.e.*, a plenary, independent, and non-deferential re-examination of the trial court's rulings. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, ¶ 5, n. 1, 932 P.2d 1100, 1103, n. 1.

## ANALYSIS

¶ 11 On appeal, Self asserts essentially two propositions:[3] (1) the summary judgment ignores his right to recover against Client for his services as measured by *quantum meruit* and his evidence in support thereof; and (2) disputed issues of fact preclude summary judgment on his tortious interference claim against Stites.

### 1. *Self's Quantum Meruit Claim*

¶ 12 Oklahoma has long recognized that, although a client may discharge an attorney at any time, if an attorney working under a contingent fee contract is discharged without cause, the attorney is nonetheless entitled to compensation for his or her services rendered up to the time of discharge. As stated in the early case of *White v. American Law Book Co.*, 1924 OK 123, ¶ 7, 233 P. 426, 427:

> The relationship of attorney and client is one of reliance, trust, and confidence. When any element of this relationship is destroyed for whatever reason, the client has the absolute right, in the interest of his own welfare, to discharge the attorney. On such discharge, the fees become due
> . . .

¶ 13 In *White*, where the contingency in question occurred prior to discharge, the Court characterized the claim as one for breach of contract and designated the measure of damages as being "the compensation named in the contract." *Id.* at ¶ 5, at 427. The Court did not condition its holding on whether the attorney seeking his fees had perfected an attorney's "lien" prior to dis-

charge; however, the Court recognized that other measures of damages—most generally based on *quantum meruit*—might apply "under other circumstances." *Id.* at ¶ 7, at 427.

¶ 14 *First National Bank & Trust Co. v. Bassett*, 1938 OK 461, 83 P.2d 837, involved a case where an attorney was discharged before a contingency occurred. There, the Court again recognized that the basis for the attorney's claim was for breach of contract, but held that his measure of damages was determinable on a "*quantum meruit* basis," including consideration of the recovery ultimately obtained by the former client. *Id.* at ¶ 22, 83 P.2d at 840 (quoting *Shattuck v. Penn. Ry. Co.*, 48 F.2d 346 (D.C.N.Y.1931)). The Court explained:

> The basis for this holding [is] that the value of an attorney's services is not solely controlled by details of his services, but his skill, diligence, and the final results in the litigation are elements bearing upon the appraisement of his employment. Although the value of what he did must be based upon quantum meruit, the ultimate result of the action constitutes an element in fixing the fee. . . . The recovery in such cases, then, seems to be allowed upon the contract, quantum meruit entering as the measure for determining the value of the services rendered, and not in itself providing the basis of recovery.

*Id.* at ¶¶ 23–24, 83 P.2d at 840. The Supreme Court repeated this rule in *Musser v. Musser*, 1995 OK 116, ¶ 14, 909 P.2d 37, 40 (emphasis added), stating that "when an attorney is discharged before the case results in a money judgment or settlement, the attorney does not recover under the contingency fee agreement, *but rather, the attorney receives the reasonable value of his services.*"[4]

¶ 15 It is true, of course, that an attorney may ensure the payment of his fee out of the

---

3. Though this is an accelerated appeal, this Court granted Self's motion requesting that the parties file briefs.

4. A similar rule is reflected in Comment 4 to Rule 1.16 of Oklahoma's Rules of Professional Conduct, 5 O.S. 2001 and Supp. 2009, ch. 1, app. 3–A, stating that "[a] client has a right to dis-

charge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Further, an attorney entitled to a fee is permitted by the Rules to prove the services which he or she rendered in a collection action, *without regard* to attorney-client privilege. *See* Rule 1.6(b)(5) and Comment 11.

proceeds of a settlement or judgment by filing a "charging lien" as provided in 5 O.S. 2001, § 6. Here, however, Self could not perfect such a lien because an attorney's "charging lien" cannot come into existence until the attorney commences an action (or files an answer containing a counterclaim) on behalf of a client, and endorses on the pleading a notice of a lien claim. *State ex rel. Okla. Bar Ass'n v. Cummings*, 1993 OK 127, ¶ 12, 863 P.2d 1164, 1169; *Republic Underwriters Ins. Co. v. Duncan*, 1985 OK 30, ¶ 8, 713 P.2d 568, 571. Nevertheless, the right to impress a lien upon a particular source of funds is not synonymous with the right to seek payment for services reasonably and properly rendered. To impose the requirement—advocated by Defendants—that an attorney must perfect a lien in order to seek any recovery at all would mean that an attorney who has attempted to settle a controversy prior to filing a case would have no recourse if the client discharged the attorney without cause. Such a rule would encourage litigation over settlement, and is contrary to both public policy and long-standing Oklahoma case law.

¶ 16 In this case, there is no substantial controversy that Self had a valid attorney-client contingent fee contract with Client, and that Client discharged Self prior to the contingency occurring.[5] Self also produced evidence that the discharge was without cause, and that Client admitted Self was entitled to compensation of a to-be-determined amount. The evidence presented as such would reasonably support a conclusion that Self is entitled to damages based on *quantum meruit* principles. *See Bassett*, 1938 OK 461, 83 P.2d 837; *see also Hamilton*

*v. Blakeney*, 1917 OK 228, 165 P. 141. The trial court's entry of summary judgment against Self therefore was error. Accordingly, we reverse the order granting summary judgment in Client's favor.

### Self's Intentional Tort Claim

¶ 17 Both parties argue that the trial court's decision concerning Self's tortious interference claim against Stites was based on the trial court's exclusion of key evidence due to the attorney-client privilege. Self asserts this was error, and argues the evidence relevant to his claim falls under an exception to the privilege in 12 O.S.2001 and Supp. 2009, § 2502. Stites argues that the exclusion was correct, with the result that Self cannot prove his claim of tortious interference.

¶ 18 Although the trial court did not explain its ruling, the trial judge's decision appears to have been based on its determination that Client terminated Self before hiring Stites. However, it could not have reached this conclusion without considering evidence that Stites' claim is "privileged," thus essentially deeming the evidence admissible.[6] We agree that communications between Client and Self concerning how and why Client hired Stites are not protected by attorney-client privilege and are admissible under the circumstances presented. We also find that the record does not support the summary judgment order.

¶ 19 Clearly, whether Client hired Stites before or after he terminated Self was a disputed fact issue. Self's affidavits contain evidence from which one could reasonably conclude that Client entered into a contract

5. Self presented evidence that he was discharged "without cause," and Client did not challenge this evidence in the trial court. We recognize that there are instances where summary judgment may be rendered in favor of an opposing party without a formal cross-motion for judgment being made, and we reject Defendants' argument that this Court is without authority to enter such judgment. *See e.g., 10A Federal and Procedure* § 2720 (3d ed.), noting that "[t]he weight of authority ... is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56." *See also Dona Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*, 516 F.3d 900, 912 (10th Cir.2008); and *Dickeson v. Quarberg*, 844 F.2d

1435, 1444 (10th Cir.1988). However, we also recognize that the issue of cause does not appear to have been considered or otherwise taken into account by the trial court in its ruling on Defendants' motion below. Therefore, we leave the issue for that court's initial consideration on remand.

6. Whether a communication is protected by attorney-client privilege from disclosure is for the trial court to decide in light of a preliminary inquiry into the existence and validity of the privilege. The trial court's ruling is conclusive in the absence of an abuse of discretion. *Chandler v. Denton*, 1987 OK 38, ¶ 20, 741 P.2d 855, 865.

with Stites *before* he terminated Self. However, this fact, even if it were undisputed, is not the only relevant fact in determining the tortious interference claim.

¶ 20 As recognized in *Wilspec Technologies, Inc. v. Dunan Holding Group Co. Ltd.,* 2009 OK 12, ¶ 7, 204 P.3d 69, 71–72, Oklahoma has embraced the definition of intentional tortious interference with a contract as set forth in the Restatement (Second) of Torts § 766 (1979):

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person *by inducing or otherwise causing the third person not to perform the contract,* is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract. (Emphasis added).

¶ 21 Under this definition, it is immaterial whether Client fired Self before or after he hired Stites. The important issue is whether Stites wrongfully or improperly interfered with Client's contract with Self, or improperly induced Client to break his contract with Self.

¶ 22 In making this determination, it is important to remember that an attorney may properly give a "second opinion" regarding a legal matter to an individual already represented by another attorney. *See, e.g., State ex rel. Okla. Bar Ass'n v. Butner,* 1998 OK 132, ¶ 15, 976 P.2d 542, 544–45 (recognizing that a client may seek a "second opinion" on a legal matter). In fact, the record contains evidence that Client contacted Stites for that very purpose. However, while it is proper to give a "second opinion," an attorney must be careful in doing so or he will be subject to the claim of tortious interference. *See, e.g., Employers Liability Assurance Corp. v. Freeman,* 229 F.2d 547, 549 (10th Cir.1955) (procurement of a contractual breach may not be actionable if one "employs fair means and acts in good faith and with justification");

*Neff v. Willmott, Roberts & Looney,* 1935 OK 119, 41 P.2d 86 (tortious interference means a wrongful act, done intentionally, without just cause or excuse); *see also* Restatement (Second) of Torts § 772 (1979).[7]

¶ 23 In this case, there is a substantial dispute as to whether Stites' conduct amounted to an actionable intentional tort. Because a substantial controversy exists regarding a material fact in issue, summary judgment was improper.

¶ 24 We have already indicated that most of the key evidence was not inadmissible due to the attorney-client privilege. We specifically reject Stites' contention that *Thompson v. Box,* 1994 OK CIV APP 183, 889 P.2d 1282, the only authority he cites on this issue, dictates judgment in his favor. In *Thompson,* the Court sustained summary judgment in favor of a defendant attorney after determining the plaintiff attorney could not prove interference with the plaintiff's *future* potential contracts with certain clients, in part because the clients refused to waive attorney-client privilege as to their discussions with the new attorney.

¶ 25 *Thompson* is distinguishable on several grounds. First, the plaintiff attorney *admitted* that any responses made by the clients to his discovery requests were covered by attorney-client privilege. *Id.* at ¶ 11, 889 P.2d at 1284. The plaintiff attorney also did not assert that the evidence fell under an exception to the privilege under the Oklahoma Evidence Code. *Id.* at ¶ 5, 889 P.2d at 1283. Here, Self unequivocally disputes that the privilege applies. Second, *Thompson* did *not* hold that the plaintiff attorney was precluded by attorney-client privilege from proving interference with his *existing* contract with the clients. Instead, the Court found it undisputed that the *existing* contract had been completed and fulfilled without loss to the plaintiff attorney. *Id.* at ¶ 10, 889 P.2d at 1284. In contrast, Self seeks to recover for losses he incurred by virtue of

---

7. Section 772 states:

   One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the advice.

   While the issue is beyond the scope of this opinion, there are additional requirements imposed by professional ethics that will come into play when an attorney is approached to give a second opinion to an individual known by the attorney to be represented by another attorney.

alleged interference with his *then-existing, uncompleted* contract with Client. Third, *Thompson* made clear that certain matters remained pending concerning the subject matter of the existing, completed contract—namely, an ongoing RICO investigation of the clients—which warranted continued assertion of the privilege. In the present case, no aspect of Client's personal injury case remains pending.

¶ 26 We believe the Oklahoma Evidence Code clearly allows consideration of the evidence regarding Client's discharge of Self and employment of Stites. Title 12 O.S. 2001 and Supp. 2009, § 2502 (A)(5), addressing attorney-client privilege under the Oklahoma Evidence Code, defines a "confidential" communication, subject to the privilege, as one that is made by the client to the attorney "in furtherance of the rendition of professional legal services to the client." The evidence on which Self seeks to rely is comprised of Client communications which did not concern the "furtherance" of Self's professional services to Client, or with Client's desire to obtain legal advice from Self on the pending case. Rather, Client's communications go to the *termination* of Self's professional services and the reasons for that termination.

¶ 27 Furthermore, the Evidence Code states there is no privilege as to a communication "relevant to an issue of breach of duty by the attorney to the client or by the client to the attorney," 12 O.S.2001 and Supp. 2009, § 2502 (D)(3). This is consistent with Oklahoma's Rules of Professional Conduct, which state in pertinent part:

Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client.

Title 5 O.S.2001 and Supp. 2008, ch. 1, app. 3–A, Rule 1.6, comment 10; *see also, Scott v. Peterson,* 2005 OK 84, ¶ 7, 126 P.3d 1232, 1234–35.

¶ 28 As we have noted above, the gravamen of Self's claim lies in Client's alleged breach of the attorney-client contract. The circumstances related to that termination are directly relevant to Self's claim against Stites, and Self may reveal those communications to the extent necessary to establish his claim. Stites, on the other hand, is not bound by the privilege to the extent necessary to defend himself from Self's allegations.

¶ 29 While we find that the communications upon which the trial court relied in reaching its decision do not violate the attorney-client privilege, other communications to which the privilege may apply should be resolved by the trial court as those issues arise on remand. *See Chandler v. Denton,* 1987 OK 38, ¶ 20, 741 P.2d 855, 865.

## CONCLUSION

¶ 30 For the reasons set forth above, the summary judgment in favor of Defendants is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

¶ 31 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, J., and BARNES, J. (sbd), concur.